

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**GARY TEDERICK and LISA TEDERICK,**
**individually and on behalf of all others similarly**
**situated,**

                    **Plaintiff,**

          **v.**                                                    **CIVIL ACTION NO. 2:22-cv-394**

**LOANCARE, LLC,**

                    **Defendant.**

### *MEMORANDUM OPINION AND ORDER*

Before the Court is Defendant LoanCare, LLC's ("Defendant" or "LoanCare") Motion to

Dismiss. Def.'s Mot. Dismiss, ECF No. 15. LoanCare moves to dismiss, in its entirety, Plaintiffs

Gary and Lisa Tederick's ("Plaintiffs" or "the Tedericks") Complaint pursuant to Federal Rule of

Civil Procedure 12(b)(6) and (7). *Id.*; Def.'s Mem. Supp. Mot. Dismiss, ECF No. 16 (Def.'s Mem.

Supp.). The Court has considered the parties' memoranda and this matter is now ripe for

determination. *See* Def.'s Mem. Supp.; Pls.'s Resp. Opp'n Def.'s Mot. Dismiss, ECF No. 20 (Pls.'s

Resp. Opp'n); Def.'s Reply Pls.'s Resp. Opp'n Def.'s Mot. Dismiss, ECF No. 21 ("Def.'s Reply").

Upon review, the Court finds that a hearing on this Motion is not necessary. *See* E.D. Va. Local

Civ. R. 7(J). For the reasons stated herein, LoanCare's Motion to Dismiss is **GRANTED** with

respect to the Tedericks' claims in Count 1 (WVCCPA Claims) alleging fraud under West Virginia

Code §§ 46A-2-127 and 46A-2-128 and Count 2 (Unjust Enrichment) in its entirety. The Motion

is **DENIED** with respect to the Tedericks' claims in Count 1 alleging unfair or unconscionable

conduct under West Virginia Code § 46A-2-128 and Count 3 (Conversion) in its entirety.

## I.    FACTUAL AND PROCEDURAL HISTORY

On September 20, 2022, the Tedericks filed a Complaint seeking class action status and alleging LoanCare violated fair debt collection provisions of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-2-122 *et seq.* ("WVCCPA"), benefited from unjust enrichment, and converted their funds. Compl., ECF No. 1. Relevant to LoanCare's Motion to Dismiss and stated in the light most favorable to Plaintiffs, the following facts are drawn from the Complaint and attachments thereto. *See Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982).

The Tedericks built their home in 2002 in Hedgesville, West Virginia. Compl. ¶ 7. On March 4, 2004, they decided to refinance their home by taking out a loan of $150,000.00 at 5.75% annual interest from Mid-States Financial Group, Inc. ("Mid-States") using a Note backed by a Deed of Trust and held by Fannie Mae. *Id.* ¶¶ 8–9; Compl. Ex. A at 1, ECF No. 1-2 ("Note"); Compl. Ex. B, ECF No. 1-3 ("Deed of Trust"). Interest was to be "charged on unpaid principal until the full amount of Principal has been paid." Note ¶ 2. The terms of the loan required the Tedericks to make scheduled monthly payments of $875.36 to the Note Holder beginning May 1, 2004, with any remaining amounts owed in full on April 1, 2034. *Id.* ¶ 3.

The Note states that "[e]ach monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." *Id.* The Tedericks were entitled to "make payments of Principal at any time before they are due," otherwise known as a "Prepayment." *Id.* ¶ 4. But they "[could] not designate a payment as a Prepayment if [they had] not made all the monthly payments due under the Note." *Id.* ¶ 4. The Tedericks agreed to notify the lender in writing when making prepayments. *Id.* The Note indicated that upon receipt of a prepayment, the Note Holder "will use [the] Prepayments to reduce the amount of Principal" owed. *Id.* The Note Holder was also authorized "to apply [a] Prepayment to the accrued and unpaid interest on the Prepayment

2

amount before applying [the] Prepayment to reduce the Principal amount of the Note." *Id.* The Deed of Trust further specifies that "[v]oluntary prepayments shall be applied first to any prepayment charges and then as described in the Note." Deed of Trust at 5, ¶ 2; Compl. ¶ 11.

The Tedericks frequently made prepayments during the life of the loan. Compl. ¶ 12. When making payments toward the loan, the Tedericks would write one check containing their monthly payment amount and a prepayment amount, specifying in the memo line that a prepayment amount was included in the total amount of the check. *Id.* ¶ 13. According to the Complaint, the loan accrued scheduled interest, meaning the the Tedericks did not owe interest on the loan until the scheduled monthly payments were due. Compl. ¶ 15.

The Note and Deed of Trust are contained on "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT[S]." *See generally* Note; Deed of Trust. The Fannie Mae Servicing Guidelines ("Guidelines") address the order in which a lender or servicer should apply scheduled monthly payments and prepayments (called "curtailments" under the Guidelines). Compl. ¶ 16. Guideline F-1-09 provides that when a borrower includes a prepayment "with the monthly payment," the loan servicer must apply the scheduled monthly payment first, then apply the prepayment. *Id.*; Compl. Ex. C at 1–2, ECF No. 1-5. In contrast, when the borrower submits a prepayment at "any other time of the month," the loan servicer must apply the prepayment first, then apply the next scheduled monthly payment. Compl. ¶ 16; Compl. Ex. C at 1–2. Guideline C-1.1-01 states: "Apply scheduled payments, including late charges (if applicable) in the order specified in the security instrument. Note: When multiple payments are received, each payment must be applied separately." Compl. Ex. D at 1, ECF No. 1-6; *see* Compl. ¶ 17. Finally, Guideline C-1.2.-01 provides that "[t]he servicer must immediately accept and apply an additional principal payment (referred to as a principal curtailment) identified by the borrower as such for a current mortgage

3

loan." Compl. ¶ 18; Compl. Ex. D at 7. The Tedericks allege these Guidelines mean that when a borrower makes a prepayment any time before the due date of a scheduled monthly payment, the servicer must immediately apply the prepayment to the unpaid principal. Compl. ¶ 19.

Between February 2, 2005 and December 20, 2019, the Tedericks made 172 payments containing a scheduled monthly payment and a prepayment ("combined payment") before the due date of a scheduled monthly payment. Compl. ¶ 20. On 144 of those payments, a servicer failed to apply the prepayment and scheduled monthly payment in the correct order. *Id.* ¶ 21. Instead, the servicer applied the scheduled monthly payment, then the prepayment. *Id.* ¶ 22. LoanCare serviced approximately the final 9 payments the Tedericks made on their loan, and it failed to apply the prepayment and scheduled monthly payment in the correct order on 8 of those occasions. *See* Compl. ¶¶ 27–28, 37. As a result of the alleged misapplication of payments, the Tedericks allege they were charged interest that they did not owe on their loan. *Id.* ¶ 23.

On or around April 1, 2019, LoanCare became the subservicer of the Tedericks' mortgage loan and began accepting and applying their loan payments. *Id.* ¶ 24. The Tedericks contacted LoanCare to explain that previous prepayments were misapplied and to request that LoanCare correct their account to reflect the correct amount of interest owed on the loan. *Id.* ¶ 25. LoanCare made no changes to the account and continued to apply the Tedericks' combined payments in the order of the scheduled monthly payment first and the prepayment second. *Id.* ¶ 26. The Tedericks made "repeated attempts to have the misapplications rectified" and allege LoanCare's "lack of responsiveness." *Id.* ¶ 28. On or around September 1, 2020, the Tedericks paid the loan in full. *Id.* ¶ 30. They allege they paid an "inflated and incorrect" amount of interest on their loan because of the order in which the prepayments were applied. *Id.*

The Tedericks assert three Counts against LoanCare. Under Count 1, they allege LoanCare's conduct violates the fair debt collection provisions of the WVCCPA, which they allege apply to LoanCare and its loan servicing activities. *Id.* ¶ 31–36 (citing W. Va. Code § 46A-2-122). The Tedericks allege that LoanCare's failure to reduce the "misstated" principal amount and continued "misapplication" of their combined payments allegedly caused the Tedericks to pay interest they did not owe and should not have been charged. *Id.* ¶ 37–40, 43. The Tedericks claim LoanCare's conduct constitutes (1) a "false representation or implication of the character, extent or amount of a claim against a consumer," W. Va. Code § 46A-2-127(d), and therefore a "fraudulent, deceptive or deceptive [*sic*] act or practice," Compl. ¶ 42; and (2) a "fraudulent, deceptive, or misleading representation or means to collect or attempt to collect claims" and "unfair and unconscionable" conduct in violation of W. Va. Code § 46A-2-128. Compl. ¶ 44.

Under Count 2, the Tedericks claim LoanCare was unjustly enriched by the same conduct, which they characteriz as statutory violations and "unlawful application of funds and collection efforts." *Id.* ¶¶ 47–53. Finally, the Tedericks allege conversion under Count 3, claiming that LoanCare converted their and other consumers' funds through the same conduct. *Id.* § 54–58. Finally, the Tedericks allege the action is brought and may be maintained as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶ 59, 60.

On January 27, 2023, LoanCare filed the instant Motion to Dismiss under Rule 12(b)(6) for failure to state a claim and Rule 12(b)(7) for failure to join necessary parties under Rule 19. LoanCare identifies as a "subservicer," which it defines as an "entity to which servicers who either own entire loans or own a loan's master servicing rights ('MSRs') can outsource servicing activities related to a mortgage loan."[1] Def.'s Mem. Supp. at 5; Decl. Edith Tharpe ¶¶ 2–3, ECF

---

[1] The Court provides these assertions of fact from LoanCare's briefs and the Declaration

No. 16-1 ("Tharpe Decl."). LoanCare's "clients" are entities that pay LoanCare to subservice loans. Tharpe Decl. ¶ 3. Those clients may own MSRs or loans themselves, and every loan has what LoanCare calls an "investor." *Id.* A LoanCare client may also be an investor on a loan. *See* Def.'s Mem. Supp. at 5–6; Tharpe Decl. ¶¶ 3–4. LoanCare avers that investors could include United States government agencies such as the Veteran's Administration, the United States Department of Agriculture, Fannie Mae, the Federal Home Loan Mortgage Corporation, and the Government National Mortgage Association, as well as private lenders. Tharpe Decl. ¶ 6. As a subservicer, LoanCare "accepts receipts of borrowers' payments of principal and interest and funds are passed through to . . . investors and LoanCare's clients." Tharpe Decl. ¶ 4. LoanCare states it subserviced Plaintiffs' loan for client New Residential Mortgage LLC, and states Fannie Mae was the investor on the loan. Def.'s Mem. Supp. at 6; Tharpe Decl. at ¶ 5.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6): Failure to State a Claim upon Which Relief can be Granted

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of actions that fail to state a claim upon which relief can be granted. For the purposes of a Rule 12(b)(6) motion, courts may only rely upon the complaint's allegations and those documents attached as exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31 (4th Cir. 1985). Courts will favorably construe the allegations of the complainant and assume that the facts alleged in the complaint are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, a court "need not accept the legal conclusions drawn from the facts," nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc., v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

---

of Edith Tharpe to give context to Plaintiffs' allegations and LoanCare's 12(b)(7) motion

Federal Rule of Civil Procedure 8(a)(2) "requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (quotation omitted). A complaint need not contain "detailed factual allegations" in order to survive a motion to dismiss, but the complaint must incorporate "enough facts to state a belief that is plausible on its face." *See id.* at 555, 570. This plausibility standard does not equate to a probability requirement, but it entails more than a mere possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 667–79 (2009). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557). To achieve factual plausibility, plaintiffs must allege more than "naked assertion[s] . . . without some further factual enhancement." *Twombly*, 550 U.S. at 557. Otherwise, the complaint will "stop[ ] short of the line between possibility and plausibility of entitlement to relief." *Id.*

Claims alleging fraud, including constructive fraud, are subject to a heightened pleading requirement. Rule 9(b) requires a party "alleging fraud or mistake" to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Mere allegations of fraud by hindsight will not satisfy heightened pleading requirement for fraud, although the rule allows conclusory allegations of a defendant's knowledge as to the true facts and of a defendant's intent to deceive. *Id.*; *see also Hillson Partners Ltd. Partnership v. Adage, Inc.*, 42 F.3d 204, 209 (4th Cir. 1994). Accordingly, to satisfy this heightened pleading requirement, "a plaintiff must allege the identity of the person who made the fraudulent misrepresentation, as well as the time, place, and content of the misrepresentation." *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d

7

776, 784 (4th Cir. 1999) ("*Harrison I*"); *see also United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008) ("These facts are often referred to as the who, what, when, where, and how of the alleged fraud." (internal quotations omitted)).

"The particularity requirement serves four purposes: 1) it puts the defendant on notice of the conduct complained of; 2) it protects defendants from frivolous claims; 3) it eliminates fraud actions in which all the facts are learned after discovery; and 4) it protects defendants from harm to their goodwill and reputation." *Hyundai Emigration Corp. v. Empower-Visa, Inc.*, No. 1:09-cv-124 (GBL), 2009 WL 10687964, at *4 (E.D. Va. July 2, 2009) (citing *Harrison I*, 176 F.3d at 784). Where a party fails to plead fraud with particularity, the party fails to state a claim under Rule 12(b)(6). *See Harrison I*, 176 F.3d at 783 n.5. Finally, "[a] court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that plaintiff has substantial prediscovery evidence of those facts." *U.S. ex rel. Carter v. Halliburton Co.*, No. 1:08-cv-1162, 2009 WL 2240331, at *7 (E.D. Va. July 23, 2009) (quoting *Harrison I*, 176 F.3d at 784).

**B.     Rule 12(b)(7): Failure to Join an Indispensable Party**

Rule 12(b)(7) provides for dismissal where a party has not been joined as required by Rule 19. The party asserting the Rule 12(b)(7) defense bears the burden of showing that a person not joined is necessary and indispensable pursuant to Rule 19. *Am. Gen. Life & Accident Ins. Co. v. Wood*, 429 F.3d 83, 92 (4th Cir.2005). A court addressing such a defense may consider evidence presented outside of the pleadings. *R–Delight Holding LLC v. Anders*, 246 F.R.D. 496, 499 (D. Md. 2007).

Rule 19 sets up "a two-step inquiry." *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 950 (4th Cir. 2020) (quoting *Owens-Illinois, Inc., v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999))). The Court first asks "whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b)." *Gunvor SA v. Kayablian*, 948 F.3d 214, 218 (4th Cir. 2020) (citation omitted). A party is necessary under Rule 19(a) if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a). If a party is necessary but "cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19(b) provides "the following nonexclusive factors to consider" when evaluating indispensability, *McKiver*, 980 F.3d at 950:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and
>
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The analysis under Rule 19 at both steps is not a "procedural formula," but rather a decision that "'must be made pragmatically, in the context of the substance of each case.'" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (quoting *Provident Tadesmens Bank*

& *Trust Co. v. Patterson*, 390 U.S. 102, 119 n.16 (1968)). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 441 (4th Cir. 1999).

## III.   DISCUSSION

LoanCare moves to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (7). *See generally* Def.'s Mem. Supp. In support, LoanCare argues that the Complaint is procedurally and substantively deficient. *See id*. at 8–18.

Plaintiffs allege, and LoanCare does not dispute, facts satisfying the requirements for federal subject matter jurisdiction under 28 U.S.C. § 1332(d). *See* Compl. § 1–4; *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 87 (2014) ("When a plaintiff invokes federal-court jurisdiction, the plaintiff's amount-in-controversy allegation is accepted if made in good faith.."). Because there is no question of federal law in this case, jurisdiction only exists in diversity under § 1332.

### A.   Applicable Law

"A federal court sitting in diversity must apply the choice-of-law rules from the forum state." *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). This Court will apply Virginia choice of law rules to determine the substantive law governing the Tedericks' claims. *See Insteel Indus., Inc. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 483 (E.D. Va. 2003). Because the same factual allegations form the basis for all claims, the following choice of law analysis applies equally to all three Counts. *See* Compl. ¶¶ 31, 47, 54, 59; *Insteel Indus.*, 276 F. Supp. 2d at 484.

"Because the Virginia choice of law rules depend on the character of the claim for relief, the Court must first determine whether the problem is actually one of tort or contract." *Insteel Indus.*, 276 F. Supp. 2d at 483–484 (citing *In re Putman*, 110 B.R. 783, 794 & n. 25 (Bankr.E.D.Va.1990); *Buchanan v. Doe*, 246 Va. 67, 71, 431 S.E.2d 289, 291–92 (1993)). Claims involving alleged fraud and statutory tort liability are subject to this analysis. *See id.* at 484. Yet whether the Tedericks' claims are best characterized as tort or contract claims is immaterial here, because either characterization would lead a Virginia court to select West Virginia law as the governing law. If the claims are based in contract, Virginia choice of law rules direct the Court credit choice of law agreements between the parties. *Zaklit v. Global Linguist Solutions, LLC*, No. 1:14-cv-314, 2014 WL 3109804, at *5 (E.D. Va. July 8, 2014) (citing *Union Cent. Life Ins. Co. v. Pollard*, 94 Va. 146, 26 S.E. 421 (1896)); *see also Settlement Funding, LLC v. Von Neumann-Lillie*, 274 Va. 76, 80, 645 S.E.2d 436, 438 (2007). The Deed of Trust provides that it "shall be governed by the federal law and the law of the jurisdiction in which the Property is located," which is West Virginia. Deed of Trust ¶ 16, p.3; *see also* Note.

If the Plaintiffs' claims are better characterized in tort, Virginia courts use the rule of *lex loci delicti*—"the law of the place of the wrong." *Insteel Indus.*, 276 F. Supp. 2d at 486 (citing *Jones v. R.S. Jones and Assoc., Inc.*, 246 Va. 3, 431 S.E.2d 33 (1993)). The "place of the wrong" is the "state where the last event necessary to make an actor liable for an alleged tort takes place," which in the case of fraud is the place "where the loss is sustained." Restatement (First) of Conflict of Laws § 377 (Am. L. Inst. 1934); *see Airlines Reporting Corp. v. Pishvaian*, 155 F. Supp. 2d 659, 663 n.4 (E.D. Va. 2001) (citing *Lachman v. Pennsylvania Greyhound Lines, Inc.*, 160 F.2d 496 (4th Cir.1947)); *Insteel. Indus.*, 276 F. Supp. 2d at 486–87 (citing *Jordan v. Shaw Indus., Inc.*, No. 96-2189, 1997 WL 734029 (4th Cir. Nov. 26, 1997)). Here, the Tedericks are located in West

11

Virginia and allege no facts suggesting a different place of injury. Plaintiffs also seek to represent a class of West Virginia residents, further suggesting their alleged injuries occurred in West Virginia.

For these reasons, West Virginia substantive law will govern Plaintiffs' claims.

## B.     Count One: WVCCPA Claims

Plaintiffs allege LoanCare violated two provisions of the WVCCPA codified at West Virginia Code §§ 46A-2-127 and 46A-2-128. Pursuant to Rule 12(b)(6), LoanCare argues the Tedericks fail to state a claim under the WVCCPA upon which relief can be granted. Def.'s Mem. Supp. at 9–17. First, LoanCare asserts the Tedericks failed to comply with the statutory requirement to provide pre-suit notice of the right to cure under § 46A-5-108(a), barring Plaintiffs' WVCCPA claims altogether. *Id.* at 9–10. Second, LoanCare argues that the WVCCPA does not cover applications of loan payments, meaning the Tedericks cannot recover under the WVCCPA as a matter of law. *Id.* at 13–17. Finally, LoanCare argues the Tedericks fail satisfy the traditional Rule 8 pleading standard and, for their § 46A-2-127 claims, the heightened pleading standard for claims alleging fraud under Rule 9(b). *Id.* at 10–13.

### i.     Pre-Suit Notice and Right to Cure

LoanCare first contends that Plaintiffs' failure to comply with the statutory pre-suit notice requirement under West Virginia Code § 46A-5-108(a) (2021) bars Plaintiffs' WVCCPA claims. Section 46A-5-108(a) provides:

> An action may not be brought pursuant to . . . § 46A-2-1 *et seq.* . . . of this code until 45 days after the consumer has informed the creditor [or] debt collector . . . in writing and by certified mail . . . of the alleged violation and the factual basis for the violation. Upon receiving the notice of alleged violation, the creditor [or] debt collector [has] 45 days from receipt . . . to make a cure offer, which shall be provided to the consumer's counsel or . . . consumer by certified mail . . . .

The Tedericks do not plead that they provided LoanCare with pre-suit notice under § 46A-5-108(a). LoanCare argues this is fatal and cites federal cases holding that such notice is required for plaintiffs to state a claim under the WVCCPA in federal court. Def.'s Mem. Supp. at 9–10 (citing *Chandler v. Greenlight Fin Serv's*, No. 2:20-CV-00217, 2021 WL 1202078, at *9 (S.D. W. Va. Mar. 30, 2021); *Waters v. Electrolux Home Prod., Inc.*, 154 F. Supp. 3d 340, 355–54 (N.D. W. Va. 2015)). The Tedericks counter the pre-suit notice requirement is "inconsistent with the Federal Rules of Civil Procedure and is displaced by those Rules in federal court." *Id.* at 8. They point to the Fourth Circuit's decision in *Pledger v. Lynch*, 5 F. 4th 511 (4th Cir. 2021), as support for their defense. *See* Pls.' Resp. Opp. at 8–9.

*Pledger* held that the pre-suit certificate requirement under West Virginia's Medical Professional Liability Act ("MPLA") was displaced by the Federal Rules of Civil Procedure. *Pledger*, 5 F.4th at 523. The MPLA pre-suit certificate statute required "would-be medical malpractice plaintiffs [to] serve on each putative defendant, at least thirty days prior to filing suit, a notice of claim that includes a 'screening certificate of merit' from a health care provider who qualifies as an expert under state law." *Id.* at 517–18 (discussing W. Va. Code § 55-7B-6 (2003)). In the certificate, the expert "must set out and explain her judgment that the 'applicable standard of care was breached' in a way that 'resulted in injury or death.'" *Id.* (quoting § 55-7B-6(b)).

*Pledger* applied the two-step framework for resolving potential conflicts between state law and the Federal Rules of Civil Procedure set forth in *Hanna v. Plumer*, 380 U.S. 460 (1965) and *Shady Grove Orthopedic Assoc's, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). *See id.* at 518–20. The court found that Federal Rules 8, 11, and 12 answered the question at issue, "whether a plaintiff must obtain an expert certificate of merit before he may file and maintain a medical

malpractice suit," in the negative.[2] *See id.* at 520. The Court rejected the United States's argument that the pre-suit certificate requirement is "substantive," emphasizing that step one of the *Hanna* and *Shady Grove* framework eliminates the "hair-splitting" *Erie* analysis of whether a rule is substantive or procedural. *Id.* at 522 (discussing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)).

LoanCare argues the MPLA's pre-suit certificate requirement is different than the WVCCPA's pre-suit notice requirement, rendering *Pledger* inapplicable. Def.'s Reply at 3–4. Indeed, these requirements are different. The WVCCPA does not require a "screening certificate of merit . . . executed under oath" by a qualified expert stating the theories of liability pursued. *Compare* W. Va. Code § 55-7B-6 (MPLA) *with* § 46A-5-108 (WVCCPA). Instead, the WVCCPA provision only requires pre-suit notice from the party itself, which triggers the noticed party's "right to cure," an opportunity to make a "cure offer" within 45 days of receipt of notice. § 46A-5-108(a). Although the noticing party must state the "alleged violation and the factual basis for the violation," *id.*, it need not obtain an expert's sworn statement attesting to its legal theories, as is the case under the MPLA. *See* § 55-7B-6.

*Pledger*'s focus on the certificate as "pre-suit expert support" for plaintiffs' claims, and not simply notice of alleged violations, indicates that *Pledger* does not cleanly apply to the WVCCPA's pre-suit notice provision. *See Pledger*, 5 F. 4th at 519; *see also id.* at 518 ("In order to file and maintain a suit . . . plaintiffs raising medical liability claims under West Virginia law must first obtain and present expert support for their claims."). Pre-suit certificates of merit and pre-suit notices are distinct concepts. *See Albright v. Christensen*, 24 F.4th 1039, 1047–48 (6th Cir. 2022) (holding Michigan's pre-suit notice and pre-suit certification requirements in medical malpractice

---

[2] The Fourth Circuit also found, under the second step of *Shady Grove*, that the Federal Rules are not invalid under the Rules Enabling Act or the Constitution. *See Pledger*, 5 F.4th at 520–21.

cases conflict with federal procedure); *Smith v. CoreCivic, Inc.*, 618 F. Supp. 3d 695, 706 (M.D. Tenn. 2022). Therefore, the question in this case is unique from *Pledger*, and the Court must undertake the two-step analysis outlined by *Hanna* and *Shady Grove*.

Under step one, the Court must decide whether the Federal Rules "answer[] the question in dispute." *Shady Grove*, 559 U.S. at 398. Here, that question is whether a plaintiff must give notice to the would-be defendant before he may file and maintain suit under the WVCCPA. *See* § 46A-5-108; *see also Albright*, 24 F.4th at 1044 ("Under *Hanna*, we must first decide whether state law conflicts with a valid federal rule of procedure on point."). "If the Federal Rules do answer that question, then they govern, notwithstanding West Virginia's law – unless, at step two of the analysis, [the Court] find[s] the relevant Federal Rules invalid under the Constitution or the Rules Enabling Act." *Pledger*, F.4th at 519 (citing *Shady Grove*, 559 U.S. at 398; *Hanna*, 380 U.S. at 471). "The relevant question under step two is whether the federal rule is a 'general rule of practice and procedure' that does 'not abridge, enlarge or modify any substantive right' and is 'procedural in the ordinary use of the term.'" *Albright*, 24 F.4th at 1044–45 (quoting *Shady Grove*, 559 U.S. at 418). If the answer to that question is "yes," the federal rule is valid, and the Court will "apply the Federal Rules without wading into the 'murky waters' of *Erie*." *Pledger*, 5 F.4th at 511 (quoting *Shady Grove*, 559 U.S. at 398–99).

Beginning with step one, Federal Rules of Civil Procedure 3, 8, 9, and 12 govern pleadings in federal court. Rule 3 "requires only the filing of a complaint to commence an action—nothing more." *Albright*, 24 F.4th at 1039; *compare* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court.") and *id.* advisory committee's note to 1937 adoption (Rule 3 "provides that the first step in an action is the filing of the complaint."), *with* W. Va. Code § 46A-5-108(a) ("An action *may not be brought* pursuant to this article and § 46A-2-1 *et seq.* . . . *until* 45

15

days after *the consumer has informed the . . . debt collector . . .* in writing and by certified mail . . . of the alleged violation and the factual basis for the violation." (emphasis added)).

There appears to be no binding West Virginia case law indicating whether failure to comply with § 46A-8-108(a) is grounds for dismissal at the state equivalent of the Rule 12 stage. At least one other federal court has granted a motion to dismiss on that basis, but it did so before *Pledger* was decided and without conducting the *Hanna* and *Shady Grove* analysis. *See Chandler*, 2021 WL 1202078 at *9. Therefore, this case is not conclusive on this issue.

West Virginia and federal courts have analyzed a similar pre-suit notice and right to cure provision under previous versions of the WVCCPA. In *Harrison v. Porsche Cars North Am., Inc.*, No. 15-0381, 2016 WL 1455864 (W. Va. 2016) (memorandum decision),[3] the Supreme Court of Appeals of West Virginia affirmed dismissal of the petitioner's claim under W. Va. Code § 46A-6-106(b) (2005) upon the respondent's motion to dismiss. *Harrison*, 2016 WL 1455864 at *2–3. Even though the petitioner pled the requisite notice, his notice was in fact deficient, which barred his claim. *Id.* at *4. In *Stanley v. Huntington Nat. Bank*, 492 Fed. App'x 456 (4th Cir. 2012), the Fourth Circuit interpreted that same pre-suit notice provision as a "mandatory prerequisite" to maintaining the plaintiff's claim. *Stanley*, 492 Fed. App'x at 461 (discussing W. Va. Code § 46A-6-106(b) (2005)). Because the plaintiff failed to comply with that requirement, *Stanley* affirmed the district court's dismissal of the plaintiff's claim upon motion for summary judgment. *See id.* Similarly, in *Waters v. Electrolux Home Prod., Inc.*, 154 F. Supp. 3d 340, 355–54 (N.D. W. Va.

---

[3] The West Virginia Supreme Court of Appeals has explained that its unpublished "memorandum decisions may be cited as legal authority, and are legal precedent, [although] their value as precedent is necessarily more limited; where a conflict exists between a published opinion and a memorandum decision, the published opinion controls." *State v. McKinley*, 764 S.E.2d 303, 313 (W. Va. 2014); *see also* W. Va. R. App. P. 21.

2015), a district court granted a motion to dismiss against a consumer fraud claim because the plaintiff failed to provide pre-suit notice under West Virginia Code § 46A-6-106(c) (2015). *Waters*, 154 F. Supp. 3d at 353–54.

Stanley and *Waters* suggest that federal courts should allow a state pre-suit notice requirement to coexist with the Federal Rules, but these cases are of little persuasion. Neither *Stanley* nor *Waters* analyzed whether the pre-suit notice rule conflicted with the Federal Rules governing the pleading stage. *See Stanely*, 492 Fed. App'x at 460–61; *Waters*, 154 F. Supp. 3d at 353–54. *Stanley* is also an unreported decision and decided the issue at the motion for summary judgment stage, rather than on a motion to dismiss. *See Stanley*, 492 Fed. App'x at 457, 461.

In contrast, the West Virginia Supreme Court of Appeals' analysis in *Harrison* is highly persuasive in interpreting the pre-suit notice requirement in § 46A-5-108(a) as an additional step imposed on plaintiffs beyond what the Federal Rules require. *See Albright*, 24 F.4th at 1046–47 (finding Michigan Supreme Court interpretations of a Michigan pre-suit notice statute instructive on the statute's conflict with the Federal Rules); *Smith*, 618 F. Supp. 3d at 704 (citing *Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015)) (considering *Ellithorpe*'s holding that a Tennessee pre-suit *notice and certificate* statute imposes "procedural requirements" persuasive in finding that a different Tennessee pre-suit *notice* requirement conflicts with the Federal Rules). The comparable pre-suit notice statute in *Harrison* required that "before an action may be brought . . . the consumer must inform the seller 'in writing and by certified mail of the alleged violation' of the statute." *Id.* at *3 (interpreting W. Va. Code § 46A-6-106(b) (2005)). The court interpreted that requirement as a "mandatory prerequisite" to filing a claim. *Stanley*, 492 Fed. App'x at 461; *see Harrison*, 2016 WL 1455864 at *7–*8. Thus, the *Harrison* petitioner's failure

to comply with the pre-suit notice requirement barred on his claim at the motion to dismiss stage, even though he pled that he gave the requisite notice. *Harrison*, 2016 WL 1455864 at \*2–\*3.

Here, the text of § 46A-5-108(a) operates the same way: "An action may not be brought . . . *until* 45 days after the consumer has informed the . . . debt collector . . . of the alleged violation and the factual basis for the violation." That kind of mandatory prerequisite "conflicts with Rule 3 by adding additional, procedural steps for commencing a suit beyond those that Rule 3 contemplates." *Martin v. Pierce Cnty.*, 34 F.4th 1125, 1131 (9th Cir. 2022) (holding Washington in conflict with Rule 3 where it required claimant to file declaration "at time of commencing action" stating counsel provided claimant with relevant law "before commencing" action). Therefore, the WVCCPA's pre-suit notice provision under § 46A-5-108(a) conflicts with Rule 3 of the Federal Rules of Civil Procedure.

The Court must now proceed to step two of the *Hanna* and *Shady Grove* framework, but brief analysis under this step will suffice. *See Pledger*, 5 F.4th at 521. "The Federal Rules of Civil Procedure enjoy 'presumptive validity under both the constitutional and statutory constraints.'" *Id.* (quoting *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987)). LoanCare does not challenge the validity of the Federal Rules. "The Supreme Court has 'so far rejected every challenge to the Federal Rules that it has considered under the Rules Enabling Act,'" and there is "'no reason to doubt the validity of the Federal Rules at issue here.'" *Id.* (quoting *Abbas v. Foreign Pol'y Grp., LLC*, 783 F.3d 1328, 1336 (D.C. Cir. 2015)); *see Albright*, 24 F.4th 1048; *Martin*, 34 F.4th at 1133.

Because the pre-suit notice requirement of § 46A-5-108(a) conflicts with Rule 3 and Rule 3 is valid, Rule 3 controls. The Court need not wade into the "murky waters" of an *Erie* analysis to determine whether § 46A-5-108 affords a substantive or procedural right, as LoanCare suggests. *Shady Grove*, 559 U.S. at 398–99; *see* Def.'s Reply at 3. Pursuant to Rule 3, the Tedericks need

not provide pre-suit notice under West Virginia Code § 46A-5-108(a) to bring suit in federal court for claims under §§ 46A-2-127 and 46A-2-128. Failure to plead pre-suit notice does not mandate dismissal of Count 1.

**ii.    Application of WVCCPA to Loan Application Activities**

LoanCare next argues the Tedericks do not allege unfair "debt collection" practices covered by the WVCCPA, but rather "loan servicing" activities that are not covered by the statue. *See* Def.'s Mem. Supp. 13–16. The Tedericks maintain that the statutory scheme does encompass LoanCare and its activities related to their loan. Pls.' Resp. Opp. at 11–15.

The WVCCPA defines "debt collection" as "any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due." W. Va. Code § 46A-2-122(c). A "claim" is "any obligation . . . of a consumer to pay money arising out of a transaction in which the money, property, insurance or service which is the subject of the transaction is primarily for personal, family or household purposes." § 46A-2-122(b). A "debt collector" is "any person or organization engaging directly or indirectly in debt collection." § 46A-2-122(d). A debt collector "includes any person or organization who sells or offers to sell forms which are, or are represented to be, a collection system, device or scheme, and are intended or calculated to be used to collect claims." *Id.*

Under West Virginia law, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." *Hammons v. W. Va. Office of Ins. Comm'r*, 235 W. Va. 577, 584, 775 S.E.2d 458 (2015). Statutory analysis begins with the statute's plain language. *Hinkle v. Matthews*, 337 F. Supp. 3d 674, 680 (S.D. W. Va. 2018) (citing *Ancient Energy, Ltd. v. Ferguson*, 219 S.E.2d 361 (W. Va. 1975)). If the text is clear, "the plain meaning is to be accepted without resorting to the rules of interpretation." *Hammons*, 775 S.E.2d at 465 (quoting Syllabus

pt. 2, *State v. Elder*, 165 S.E.2d 108 (W. Va. 1968)). "Where, however, the statutory language is not certain, the statute is ambiguous and must be construed to ascertain its legislative intent." *Id.* The Supreme Court of Appeals of West Virginia "has recognized that the [WV]CCPA is a remedial statute intended to protect consumers from unfair, illegal and deceptive business practices, and must be liberally construed to accomplish that purpose." *Fleet v. Webber Springs Owners Ass'n, Inc.*, 772 S.E.2d 369, 377 (W. Va. 2015) (quoting *Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 72 (W. Va. 2010)).

The Tedericks' obligation to make payments on their home mortgage loan pursuant to the Note and Deed of Trust plainly constitute "claims" under the WVCCPA. The issue is whether LoanCare's activity in servicing the loan constitutes "debt collection." If so, then LoanCare is a "debt collector" under the expansive definition of that term. § 46A-2-122(d) (". . . any person or organization engaging directly or indirectly in debt collection."); *see Rewalt v. Draper & Goldberg, PLLC*, No. 3:06–0540, 2008 WL 2566957, at *5 (S.D. W. Va. June 24, 2008). If loan servicing is not debt collection, however, then LoanCare is not a "debt collector" and the prohibitions under §§ 46A-2-127 and 46A-2-128 will not apply to LoanCare. *See Hinkle*, 337 F. Supp. 3d at 680–85 (dismissing claim under § 46A-2-127 because sale of insurance did not create a "claim" or "debt," meaning insurer was not a "debt collector" covered by WVCCPA debt collection provisions).

Although there is "scant caselaw on whether a loan servicer qualifies as a debt collector under the WVCCPA," *Chirchir v. Citizens Bank, N.A.*, No. 3:20-0416, 2022 WL 407091, at *8 (S.D. W. Va. Feb. 9, 2022), the Tedericks allege sufficient facts to demonstrate LoanCare engaged in "debt collection" and qualifies as a "debt collector." The WVCCPA's definition of "debt collection" is broad, as it encompasses "any action . . . in the collection of claims owed or due."

20

W. Va. Code § 46A-2-122(c). The word "any" is particularly permissive. *See Thomas v. Firestone Tire & Rubber Co.*, 266 S.E.2d 905, 908–09 (W. Va. 1980) (construing "any" as "a fundamental and irreducible concept" when holding the definition of "debt collector" does not exclude creditors collecting their own debts). The Note and Deed of Trust specify how payments on Plaintiffs' loan are to be applied toward principal and interest. Compl. ¶¶ 10–12. The order in which those payments are applied allegedly affected the amount of principal and interest the Tedericks owed over time. *Id.* ¶¶ 23, 29, 43. Because LoanCare's application of payments affects the amount owed on the loan and the amounts the Tedericks paid to LoanCare, LoanCare's activity falls within "any action . . . in the collection of claims owed." § 46A-2-122(c); *see* Compl. ¶ 24. Considering also that LoanCare need only have "indirect[]" involvement in debt collection, the Complaint contains sufficient facts to allege LoanCare is a "debt collector" under the WVCCPA. § 46A-2-122(d); *see Rewalt*, 288 WL 2566957 ("[A]n organization is deemed a 'debt collector' even if its involvement in the debt collection is only indirect.").

LoanCare cites two federal cases casting doubt on whether loan servicers constitute "debt collectors" under the WVCCPA. *See* Def.'s Mem. Supp. 13–17; Def.'s Reply at 9–11 (citing *Rice v. Green Tree Servicing, LLC,* No. 3:14-Cv-93, 2015 WL 5443708, at *11 (N.D. W. Va. Sept. 15, 2015); *Perrine v. Branch Banking & Tr. Co.*, No. 2:17-CV-70, 2018 WL 11372226, at *5-6 (N.D. W. Va. Sept. 25, 2018)). Neither of these cases dismissed WVCCPA claims under Rule 12(b)(6) on that basis, however. In *Rice*, the court held the defendant loan servicer made no "false representation" within the meaning of § 46A-2-127(d) and dismissed the claim upon motion for summary judgment "[r]egardless of the [d]efendant's status as a debt collector." *Rice*, 2015 WL 5443708 at *12. The court later commented that even if the defendant's monthly billing statements "could be construed as misleading or false representations . . . it would stretch too far the language

21

and the purpose of the WVCCPA to hold that the [d]efendant misled the Plaintiff while engaging in debt collection." *Id.* Yet this comment was ancillary to the court's holding and made after the benefit of discovery. *See id.*

*Perrine* similarly held the defendant's conduct "does not rise to the level of 'unscrupulous collection practices'" under § 46A-2-127(d) and dismissed the claim upon motion for summary judgment. *Perrine*, 2018 WL 11372226 at *5. Although *Perrine* said the defendant's conduct "arguably[] did not constitute collection practices at all" and quoted the comment from *Rice* above, the court explained the defendant did not contact the plaintiffs about an outstanding debt except to send billing statements, which it held were not "false representations." *Id. Perrine* further noted that "if the plaintiffs can produce evidence of other forms of communication attempting to collect the mortgage debt," the evidence would be eligible for consideration by the jury on that claim. *Id.* at *6.

Finally, LoanCare cites several cases distinguishing loan servicing from debt collection under the Federal Debt Collection Practices Act ("FDCPA"). *See* Def.'s Mem. Supp. at 15–16; *see, e.g.*, *Bohringer v. Bayview Loan Servicing, LLC*, 141 F. Supp. 3d 1229, 1242 (S.D. Fla. 2015); *Jenkins v. BAC Home Loan Servicing, LP*, 822 F. Supp. 2d 1369, 1374 (M.D. Ga. 2011). The WVCCPA's definition of "debt collector" is different than that under the FDCPA because it incorporates the WVCCPA's broad definition of "debt collection." *Compare* WVCCPA § 46A-2-122(c)–(d) *with* 15 U.S.C. § 1692a(6).[4] The FDCPA cases are thus unpersuasive here.

---

[4] In relevant part, the FDCPA defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

At a minimum, the issue of whether LoanCare acted as a "debt collector" in this case is likely best resolved after further fact development, rather than at the motion to dismiss stage. *See Rewalt*, 2008 WL 2566957 at \*5 ("[T]he issue of whether or not [the defendant] acted as a 'debt collector' is best resolved by a jury."). For the foregoing reasons, the Tedericks sufficiently plead that LoanCare is a "debt collector" for purposes of the WVCCPA's debt collection provisions. *See* W. Va. Code §§ 46A-2-122, 46A-2-127, 46A-2-128.

### iii.   Claims under W. Va. Code § 46A-2-127

LoanCare argues the Tedericks fail to allege sufficient facts to support their claims under West Virginia Code § 46A-2-127 regarding alleged fraudulent, deceptive, or misleading representations. Def.'s Mem. Supp. at 10–11. LoanCare asserts Plaintiffs must meet the heightened pleading standard under Rule 9(b) but fail to do so. *See id.* The Tedericks contend Rule 9(b) does not apply because they "did not allege fraud," and that even if it does apply, the Complaint satisfies the Rule 9(b) standard. *See* Pls.' Resp. Opp. at 16–18.

The heightened pleading of Rule 9(b) applies to "allegation[s] that [have] the substance of fraud," and not simply to "causes of action or elements of fraud." *Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008). The Court looks "beyond each [claim's] label to its substance in order to ascertain if it actually sounds in fraud." *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 670 (4th Cir. 2018) (citing *Cozzarelli*, 549 F.3d at 629). A "conclusory disclaimer" or "superficial label" will not suffice to escape Rule 9(b) where the substance of the claim sounds in fraud. *Cozzarelli*, 549 F.3d at 629.

The Tedericks' claims under West Virginia Code § 46A-2-127 sound in fraud. Section 46A-2-127 prohibits "fraudulent, deceptive or misleading representation[s] or means" in the collection of claims or information regarding consumers. The Tedericks allege LoanCare "failed

to accurately reduce the misstated the amount [*sic*] of the Plaintiff's unpaid principal every month" and "charged the Plaintiffs interest amounts that the Plaintiffs did not owe" as a result of the inaccurately high principal. Compl. ¶¶ 38, 40. These alleged facts demonstrate that the "gravamen of the alleged violation of Section 46A-2-127 is fraud, triggering Rule 9(b)." *Moore v. RoundPoint Mortgage Serv. Corp.*, No 2:18-cv-01222, 2018 WL 4964362, at *3 (S.D. W. Va. Oct. 15, 2018).

Plaintiff's claims under § 46A-2-127 fail the Rule 9(b) standard, because the Tedericks fail to lay out the "who, what, where, when, and why" of the alleged fraud. *Wilson*, 525 F.3d at 379. The Tedericks do not identify the name of any individual who made a misrepresentation to them nor the dates and times of the misrepresentations made. *See Moore*, 2018 WL 4964362 at *3. Further, the Tedericks do not allege with particularity the exact "fraudulent, deceptive, or misleading representation[s]" by LoanCare. The most specific allegations provided are the 8 payments "posted" by the Tedericks between January 24, 2020 and August 24, 2020. Compl. ¶ 27. Nowhere do the Tedericks allege the particular representations or "false implication[s]" made by LoanCare. § 46A-2-127(d). Plaintiffs suggest in their brief that the Complaint "states that LoanCare misapplied the Tedericks' prepayments 144 times to principal and interest," Pls.' Mem. Opp. at 17, but the Complaint does not say that. The Complaint alleges that on 144 occasions between February 2, 2005 and December 20, 2019, "a servicer" failed to apply the payments correctly. Compl. ¶ 21, 24. LoanCare became the Tedericks' servicer on or around April 1, 2019, and allegedly misapplied combined payments posted on 8 dates thereafter. *Id.* ¶¶ 24, 27. Plaintiffs fail to identify any individuals involved in any alleged misapplication, fail to specify the date or time of any alleged misapplication, and state no facts explaining how LoanCare is responsible for any fraudulent activity occurring before April 2019.

The Tedericks' vague allegations are insufficient to ensure LoanCare is "made aware of the particular circumstances for which [it] will have to prepare a defense at trial." *Harrison I*, 176 F.3d at 784. Therefore, Plaintiffs fail to state a claim under § 46A-2-127 in Count 1.

iv.     **Claim under W. Va. Code § 46A-2-128**

LoanCare attacks the Tedericks' claim under § 46A-2-128 for failing to satisfy the traditional Rule 8 pleading standard. *See* Def.'s Mem. Supp. at 12–13. The Tedericks assert § 46A-2-128 prohibits debt collectors from using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers." Compl. ¶ 44. Although that statute does not contain that quoted language, the Tedericks generally allege LoanCare's conduct constitutes unfair and unconscionable conduct "in violation of the WVCCPA." *Id.*

To the extent the Tedericks allege violations of § 46A-2-128 involving "fraudulent, deceptive or misleading representations," their claim fails to satisfy Rule 9(b) for the same reasons as their claim under § 46A-2-127. Yet Plaintiffs' Complaint contains sufficient facts to state a claim under § 46A-2-128 for unfair or unconscionable conduct.

West Virginia Code § 46A-2-128 provides:

> No debt collector may use unfair or unconscionable means to collect or attempt to collect any claim. Without limiting the general application of the foregoing, the following conduct is deemed to violate this section:
> . . .
> (d) The collection of or the attempt to collect any interest or other charge, fee or expense incidental to the principal obligation unless such interest or incidental fee, charge or expense is expressly authorized by the agreement creating or modifying the obligation and by statute or regulation;

W. Va. Code § 46A-2-128. LoanCare argues the Tedericks fail to particularly allege one of the six subsections of the statute, but the plain text of § 46A-2-128 indicates that is unnecessary. The "six instances, (a)-(f), of conduct deemed to violate [§ 46A-2-128] [do] not limit its scope to those six."

*Stoler v. PennyMac Loan Servs., LLC*, No. 2:18-cv-00988, 2019 WL 691406, at *3 (S.D. W. Va. Feb. 19, 2019). Instead, those six categories identify specific conduct violating the broader prohibition on "unfair or unconscionable means to collect or attempt to collect any claim." § 46A-2-128.

The Tedericks plead facts aligning with the prohibited conduct in subsection (d). Plaintiffs allege LoanCare charged them interest beyond that owed under the Note and Deed of Trust because LoanCare misapplied their combined loan payments and misstated principal. Compl. ¶¶ 10–11, 29–30, 38–40. The Tedericks also allege LoanCare's failure to correct the account reflecting the prior misapplications by other servicers resulted in unauthorized interest charges. *Id.* ¶ 43. For these reasons, the Tedericks adequately state a claim of "unfair or unconscionable" conduct in violation of § 46A-2-128.

### v.   Disposition on Defendant's Motion regarding Count 1

LoanCare's Motion to Dismiss is GRANTED in part and DENIED in part on Count 1. The Motion is GRANTED with respect to Plaintiffs' claim under § 46A-2-127 and to any claim of fraud associated with § 46A-2-128. The Motion is DENIED with respect to Plaintiffs' claim under § 46A-2-128 relating to unfair or unconscionable conduct.

### C.   Count Two: Unjust Enrichment

In Count 2, the Tedericks allege LoanCare benefited from unjust enrichment at their expense through the alleged misapplication of prepayments. *See* Compl. ¶¶ 47–53. LoanCare argues the Tedericks cannot state a claim for unjust enrichment because (1) an express contract covers the subject matter, barring the claim as a matter of law, and (2) plaintiff fails to plead sufficient facts to state the claim. Def.'s Mem. Supp. at 17. The Court finds that the Tedericks

cannot state a claim for unjust enrichment as a matter of law, and Count 2 is dismissed on that basis.

The elements of unjust enrichment under West Virginia law are: "(1) a benefit conferred upon the defendant; (2) an appreciation or knowledge by the defendant of such a benefit; and (3) the defendant's acceptance of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Span Constr. & Eng'g, Inc. v. Uwharrie Builders, LLC*, No. 3:18-CV-178, 2019 WL 1574233, at *2 (N.D. W. Va. Jan. 30, 2019) (citing *Employer Teamsters-Local Nos. 175/505 Health & Welfare Trust Fund v. Bristol Myers Squibb Co.*, 969 F. Supp. 2d 463, 471 (S.D. W. Va. 2013)). The benefit must have been "received and retained under such circumstance that it would be inequitable and unconscionable to permit the party receiving [it] to avoid payment therefor." *Employer Teamsters-Local Nos. 175/505*, 969 F. Supp. 2d at 471 (citing *Realmark Devs., Inc. v. Ranson*, 542 S.E.2d 880, 884–85 (W. Va. 2000)).

"Under West Virginia law, there can be no recovery for unjust enrichment if there is an express contract covering the same subject matter." *Worldwide Machinery L.P. v. Columbia Gas Transmission, LLC*, No. 5:19-CV-208, 2019 WL 3558174, at *2 (N.D. W. Va. Aug. 5, 2019). A claim of unjust enrichment requires an implied contract, but "an implied contract and an express one covering the identical subject-matter cannot exist at the same time. If the latter exists, the former is precluded." *Hanover Resources, LLC v. LML Props., LLC*, 828 S.E.2d 829, 837 (W. Va. 2019); *see also Bright v. QSP, Inc.*, 20 F.3d 1300, 1306 (4th Cir. 1994) (citing *Case v. Shepherd*, 84 S.E.2d 140, 144 (W. Va. 1954)).

LoanCare argues the Tedericks plead and rely on the existence of an express contract, the Note and Deed of Trust, governing the subject matter of the dispute. Def.'s Mem. Supp. at 18. The Tedericks counter that LoanCare is not a contracting party under the Note and Deed of Trust,

which LoanCare confirms. Pls.' Resp. Opp. at 22; Def.'s Mem. Supp. at 13, 18; Def.'s Reply at 13–15. Yet West Virginia law asks whether an existing contract covers the same "subject matter" as an asserted implied contract. *See Hanover Resources*, 828 S.E.2d at 837. This is true even where only one litigating party is a contractual party to the express contract. *Rosenbaum v. Price Const. Co.*, 184 S.E. 261, 263 (W. Va. 1936) ("[P]laintiff's express contract with the surety company precludes an implied contract with [the defendant]. The fact that [the defendant] was benefited does not change the rule.").

Here, the "subject matter" at issue is the application of loan payments. In Count 2, the Tedericks re-allege all facts in the Complaint. Compl. ¶ 47. These include: the Note and Deed of Trust require payments on the Tedericks' loan, *id.* ¶ 8, Note ¶¶ 3, 8, Deed of Trust ¶ 1; the Note and Deed of Trust afforded the Tedericks a "right" to make prepayments against principal, Compl. ¶ 10–12, Note ¶ 4, Deed of Trust ¶ 2; and the Note and Deed of Trust govern application of monthly payments and prepayments to principal and interest, *id.* ¶ 10–11. The fact that LoanCare is not party to the Note and Deed of Trust does not change the nature of Plaintiff's allegations. Because "an implied contract and an express one covering the identical subject matter cannot exist at the same time," there is no implied contract over application of loan payments, and no claim for unjust enrichment can exist. *Rosenbaum*, 184 S.E. at 263; *see Worldwide Machinery*, 2019 WL 3558174 at *2; *see also Fed. Sav. & Loan Ins. Corp., v. Quality Hotels & Resorts, Inc.*, No. 90-2391, 1991 WL 30211, at *4 (4th Cir. 1991) (holding *Rosenbaum*'s analysis applies to unjust enrichment claims and that "[plaintiff] Quality cannot recover on a theory of unjust enrichment for services it rendered under a valid contract with ARS, even though the services provided a benefit to a third party, FDIC, with whom Quality had no contract.").

28

For these reasons, the Tedericks cannot state a claim of unjust enrichment as a matter of law. LoanCare's motion is Granted with respect to Count 2.

**D.    Count Three: Conversion**

Under Count 3, the Tedericks allege LoanCare converted their funds by charging unauthorized interest on their loan. Compl. ¶¶ 54–58. They also reallege all facts in the Complaint under Count 3. *Id.* ¶ 54. LoanCare argues (1) the Tedericks' claim is barred by the Gist of the Action doctrine, and (2) the Tedericks' fail to plead facts satisfying the elements of conversion. The Court finds it inappropriate to apply the Gist of the Action doctrine at this stage, and the Tedericks plead sufficient facts to plausibly state a claim of conversion. LoanCare's Motion is therefore Denied with respect to Count 3.

Under West Virginia Law, "conversion is any distinct act of dominion wrongfully exerted over the property of another, and in denial of his rights." *Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love LLP*, 617 F. Supp. 2d 447, 453 (W.D. Va. 2008) (citing *Rodgers v. Rodgers*, 399 S.E.2d 664, 677 (W. Va. 1990)); *see Miami Coal Co. v. Hudson*, S.E.2d 114, 121 (W. Va. 1985)). Conversion can be proven in three ways: "(1) by a tortious taking; (2) by any use or appropriation to the use of the defendant indicating a claim of right in opposition to the rights of the owner; or (3) by a refusal to give up the possession to the owner on demand." *Hinkle Oil & Gas*, 617 F. Supp. 2d at 453 (citing *Shamblin's Ready Mix, Inc. v. Eaton Corp.*, No. 86–1114, 1987 WL 37511 (4th Cir. 1987)); *see Haines v. Cochran Bros.*, 26 W. Va. 719, 723–24 (1885). A plaintiff need only plead facts sufficient to plausibly claim one of these methods of proof, but in all cases, a plaintiff must have "title or right of possession" to the property. *Thompson Dev., Inc. v. Kroger Co.*, 413 S.E.2d 137, 142 (W. Va. 1991) (quoting Syllabus, *Kisner v. Commercial Credit Co.* 174 S.E. 330 (W. Va. 1934)); *see Haines*, 26 W. Va. at 723.

i.  **Gist of the Action Doctrine**

LoanCare asserts the gist of the action doctrine bars the Tedericks' conversion claim because conversion is a tort and their claim is better characterized as a contract claim. The Tedericks contend their conversion claim stands alone because they do not claim breach of contract. Pls.' Resp. Opp. at 25.

"The gist of the action doctrine seeks 'to prevent the recasting of a contract claim as a tort claim.'" *Princeton Cmty. Hosp. Ass'n v. Nuance Comm'ns, Inc.*, Civil Action No. 1:19-00265, 2020 WL 1698363, at *6 (S.D. W. Va. April 7, 2020) (quoting *Gaddy Eng'g Co. v. Bowles Rice McDavid Graff & Love, LLP*, 746 S.E.2d 568, 586 (W. Va. 2013)). A plaintiff "seeking relief in tort [must] identify a non-contractual duty breached by the alleged tortfeasor." *Dan Ryan Builders, Inc. v. Crystal Ridge Development, Inc.*, 783 F.3d 976, 980 (4th Cir. 2015) (citing *Gaddy Eng'g*, 746 S.E.2d at 577). Accordingly, under the gist of the action doctrine,

> recovery in tort will be barred when any of the following factors is demonstrated:
>
>> (1) where liability arises solely from the contractual relationship between the parties;
>> (2) when the alleged duties breached were grounded in the contract itself;
>> (3) where any liability stems from the contract; and
>> (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Gaddy Eng'g*, 746 S.E.2d at 577 (citing *Star v. Rosenthal*, 884 F. Supp. 2d 319, 328–29 (E.D. Pa. 2012)).

Courts exercise caution when evaluating whether to dismiss a tort action on a motion to dismiss, "because whether tort and contract claims are separate and distinct can be a factually intensive inquiry." *Haymond v. Lundy*, Nos. 99–CV–5015, 99–CV–5048, 2000 WL 804432, at *8 (E.D. Pa. June 22, 2000); *see Princeton Cmty. Hosp. Ass'n*, 2020 WL 1698363 at *6–7. For that

reason, the gist of the action doctrine is particularly difficult to apply at the motion to dismiss stage. *See Princeton Cmty. Hosp. Ass'n*, 2020 WL 1698363 at *6–7.

The Tedericks allege no contractual relationship with LoanCare, and both parties state in their briefs that no such contract exists. Pls.' Resp. Opp. at 22; Def.'s Mem. Supp. at 13, 18; Def.'s Reply at 13–15. At minimum, this fact eliminates *Gaddy* factors 1 and 4, as they are predicated on at least an alleged contract between the parties. *See Gaddy*, 746 S.E.2d at 586. The absence of a contractual relationship likely precludes the entire gist of the action doctrine from dispensing with Plaintiff's conversion claim, as West Virginia case law suggests that tort claims are invalid only in the face of a contract between the two litigating parties. *See Gaddy Eng'g*, 746 S.E.2d at 586 ("Succinctly stated, whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract."); *Lockhart v. Airco Heating & Cooling, Inc.*, 567 S.E.2d 619, 614 (W. Va. 2002) ("Tort liability of the parties to a contract arises from the breach of some positive legal duty imposed by law because of the relationship of the parties, rather than from a mere omission to perform a contract obligation." (quoting 86 C.J.S. Torts § 4 (1997))); *Sewell v. Gregory*, 371 S.E.2d 82, 84 (W. Va. 1988) (explaining tort liability requires no privity between the parties to a suit, unlike claims for breach of contract); *see also Star*, 884 F. Supp. 2d at 328–29 ("[A] claim is limited to a contract claim when the parties' obligations are defined by the terms of the contracts."). The cases Defendant cites in support of dismissal under the gist of the action doctrine all involve a contractual relationship between the litigating parties, making them less persuasive here. *See S. Country Farms, Inc. v. Th Expl. LLC*, No. 5:21-CV-84, 2021 WL 5147989, at *3 (N.D. W. Va. Nov. 4, 2021); *EQT Prod. Co.*, No. 5:18-CV-23, 2019 WL 286748, at *5 (N.D. W. Va. Jan. 22, 2019);

31

*Rodgers v. Southwestern Energy Co.*, No. 5:16-Cv-54, 2016 WL 3248437, at *3 (N.D. W. Va. June 13, 2016).

The Tedericks allege LoanCare violated Fannie Mae Guidelines addressing application of prepayments and monthly payments, and that these violations led to unauthorized interest charges. Compl. ¶ 16–19. Because the Guidelines are not alleged to be part of the Note and Deed of Trust, the Tedericks allege duties that are not necessarily "grounded in the contract itself" or "stem[ming] from the contract," meaning *Gaddy* factors 2 and 3 are also eliminated. *Gaddy*, 746 S.E.2d at 586; *see Dan Ryan Builders*, 783 F.3d at 980 (West Virginia's "'gist of the action' doctrine requires plaintiffs seeking relief in tort to identify a non-contractual duty breached by the alleged tortfeasor."); *see also Star*, 884 F. Supp. 2d at 328 ("[I]f the contract is merely collateral to the wrong described, the existence of a contract does not prevent recovery in tort.").

For the foregoing reasons, the Court declines to dismiss the Tedericks' conversion claim under the gist of the action doctrine.

### ii.    Sufficiency of Plaintiffs' Allegations

The Tedericks plead facts sufficient to state a claim of conversion under West Virginia law. Frist, the Tedericks' allegations that LoanCare "charged" and "retained" "interest that was not authorized or owed" by "misstating the amount of the Plaintiffs' unpaid principal" are sufficient to claim a "tortious taking" or "appropriation . . . indicating a claim of right in opposition to [the Tedericks'] rights." Compl. ¶¶ 55–57; *Hinkle Oil & Gas*, 617 F. Supp. 2d at 453. These same allegations are sufficient to claim "title or right of possession" to the money paid in unauthorized interest. *Thompson Dev.*, 413 S.E.2d at 142.

LoanCare contests that interest paid is not "property" for the purposes of a conversion claim because it is "intangible" and not specifically identifiable. Def.'s Mem. Supp. at 23–24.

32

LoanCare cites cases interpreting other states' conversion laws, as well as *DIRECTV, Inc. v. Borich*, No. CIV.A. 1:03-2146, 2004 WL 2359414 (S.D. W. Va. Sept. 17, 2004), which rejected a conversion claim under West Virginia law regarding a satellite signal. *See* Def.'s Mem. Supp. 23–24.

Although West Virginia has not squarely answered whether conversion claims for intangible property are valid, the West Virginia Supreme Court has recognized that a claim of conversion may lie for money or funds that are not purely sought as chattel property. *See Miami Coal Co., Inc. v. Hudson*, 332 S.E.2d 114, 121–22 (W. Va. 1985) (recognizing conversion action for misappropriation of corporate funds); *Inter-Ocean Cas. Co. v. Leccony Smokeless Fuel Co.*, 17 S.E.2d 51, 52–53 (W. Va. 1941) ("[A] plaintiff is entitled to recover on an implied promise or for money had and received, where a benefit has accrued to one converting money or property."); *see also In re Corotoman, Inc.*, No. 2:19-bk-2013, 42022 WL 985454, at *6 (Bankr. S.D. W. Va. Mar. 31, 2022) (finding liability for conversion under West Virginia law where defendant took and failed to remit rents which Ticketmaster had right to collect pursuant to lease agreement with defendant); *Hinkle Oil & Gas*, 617 F. Supp. 2d at 454 ("West Virginia has not directly addressed whether it recognizes an action for conversion of intangible property.").

Elsewhere, courts have recognized that although the "general rule is that monies are intangible and, therefore, not subject to a claim for conversion . . . an exception exists when a plaintiff can allege that the defendant converted specific segregated or identifiable funds." 18 Am. Jur. 2d Conversion § 7 (May 2023 Update) (citing *Allied Inv. Corp. v. Jansen*, 731 A.2d 957 (Md. 1999)). The Tedericks allege LoanCare had "an obligation to return or otherwise treat in a particular manner" their mortgage payments, *id.*, but after they sent payment to LoanCare, LoanCare allegedly misapplied the payment such that less of the prepayment amounts were applied

33

to principal and more was applied to interest calculated using an unduly high principal amount. Compl. ¶ 28–30. That money paid in allegedly "unowed" interest is a sum sufficiently capable of identification for the purpose of stating a claim upon which relief can be granted. *See ADP Investor Comm'n Servs., Inc. v. In House Attorney Servs., Inc.*, 390 F. Supp. 2d 212, 224–25 (E.D.N.Y. 2005) (refusing to dismiss claim of conversion under New York law where plaintiff sufficiently alleged conversion of money sent via wire transfer of a specific amount); *Natomas Gardens Inv. Grp., LLC v. Sinadinos*, 710 F. Supp. 2d 1008, 1019–20 (E.D. Cal. 2010) (denying motion to dismiss on conversion claim where plaintiffs sufficiently alleged an "amount that is capable of identification" by describing the funds allegedly converted); 18 Am. Jur. 2d Conversion § 7.

Additionally, LoanCare argues the Tedericks have no right of immediate possession because they voluntarily submitted payment to LoanCare, thereby relinquishing ownership of the funds. *See id.* at 24–25. Although West Virginia has not clearly answered whether a voluntary payment negates a claim of conversion over that money, the Court is not convinced it does. A plaintiff need not have actual possession or title to claim conversion under West Virginia law; rather, "[p]ossession with an assertion of title . . . gives the possessor such a property as will enable him to maintain [an action for conversion] against a wrongdoer; for the possession is *prima facie* evidence of property." *Haines v. Cochran*, 26 W. Va. at 723. The fact the Tedericks made voluntary payments simply means that "[c]onversion [can] only occur at some later date, when [the defendant] committed a distinct act of wrongful dominion." *Hinkle Oil & Gas*, 617 F. Supp. 2d at 453. The Tedericks sufficiently assert title to the money paid in allegedly unowed interest, meaning they provide *prima facia* evidence of a right to possession, and they allege acts of "wrongful dominion" occurring after they made payments to LoanCare and other loan servicers. *See id.*

34

For these reasons, the Tedericks allege sufficient facts to state a claim of conversion. LoanCare's Motion is Denied with respect to Count 3.

**E.**     **Defendant's Rule 12(b)(7) Motion**

LoanCare moves to dismiss the entire complaint under Rule 12(b)(7) for failure to join indispensable parties under Rule 19. *See* Mot.; Def.'s Mem. Supp. at 26–30. The court finds the absent parties LoanCare identifies are not necessary under Rule 19(a)

LoanCare argues the Tedericks are "challenging an industry standard," meaning their claims and the alleged class claims "impact multiple necessary and indispensable parties who cannot be joined." *See* Def.'s Mem. Supp. at 26. First, LoanCare asserts the Tedericks's prior servicers and Fannie Mae are necessary parties under Rule 19(a) because Plaintiffs' claims "question" loan servicing practices and construe Fannie Mae contract terms and Guidelines. *Id.* at 26–27. For the same reasons, LoanCare avers the putative class claims implicate every LoanCare client and investor, all servicers and subservicers involved with every class member's loans, and Fannie Mae as necessary parties. *Id.* at 27–28. LoanCare further argues complete relief cannot be afforded without joining these parties. *Id.* at 28. Second, LoanCare argues joinder of these parties is infeasible under Rule 19(b) because there are "potentially thousands" of interested parties, and their identities and the Court's personal jurisdiction over them cannot be readily determined. *Id.* at 29–30.

The Tedericks counter that Fannie Mae is not a necessary party because they do not sue to enforce a contract, but rather bring suit on LoanCare's conduct alone. Pls.' Resp. Opp. at 27–28. Plaintiffs further argue that LoanCare is liable for the Tedericks' prior servicers' conduct as a "successor in interest" under the Real Estate Settlement Procedures Act ("RESPA"), meaning their prior servicers are not necessary to this action. *Id.* at 28. The Tedericks argue alternatively that if

there are necessary and indispensable parties that cannot be joined, including prior servicers, the Court should not dismiss the Tedericks' claims as applied to LoanCare's conduct while it serviced Plaintiffs' loan between April 2019 and September 2020. *Id.* at 29.

### i.   Rule 19(a)(1)(A)

Beginning with Rule 19(a)(1)(A), LoanCare fails to show why the Court "cannot afford complete relief among existing parties" without joining the parties it proposes are necessary. Fed. R. Civ. P. 19(a)(1)(A). "Complete relief refers to relief as between persons already parties, not between a party and an absent person whose joinder is sought." *United States v. Arlington Cty.*, 669 F.2d 925, 929 (4th Cir. 1982). "The Court must look only at the claims and parties already in front of it in making this determination." *SS Richmond LLC v. Harrison*, No. 3:22-cv-405, 2023 WL 1469997, at *2 (E.D. Va. Jan. 9, 2023) (citing *Riesett v. Mayor & City Council of Balt.*, No. GLR–13–1860, 2013 WL 5276553, at *3 (D. Md. Sept. 18, 2013)). The Tedericks only bring claims against LoanCare, and LoanCare does not explain why the Court could not afford complete relief among the existing parties. *See id.* ("Plaintiffs bring claims solely against the named Defendants and thus the Court can accord Plaintiffs complete relief as to Defendants between the existing parties, because no judgment is sought against the [other allegedly necessary parties]."). LoanCare thus fails to show other parties are necessary under Rule 19(a)(1)(A).

### ii.   Rule 19(a)(1)(B)

Moving to Rule 19(a)(1)(B), none of the "interested parties" LoanCare identifies or suggests to exist have sought to join this suit or otherwise "claim[ed] an interest relating to the subject of the action." Fed. R. Civ. P. 19(a)(1)(B). If this deficiency does not automatically defeat Rule 19(a)(1)(B), it at least strongly suggests that Rule does not apply here. *See Marina One, Inc. v. Jones*, 29 F. Supp. 3d 669, 678 (E.D. Va. 2014) (finding federal courts interpret Rule 19(a)(1)(B)

"narrowly, usually requiring some sort of affirmative indication by the absent party in the court hearing the Rule 19 matter."); *Landfall Trust LLC v. Fidelity Nat'l Title Ins. Co.*, --- F. Supp. 3d. ---, No. 3:22-cv-194, 2023 WL 3391985, at *2 (E.D. Va. May 11, 2023) ("Many courts in the Fourth Circuit have held that where the absent party has not affirmatively claimed an interest, Rule 19(a)(1)(B) does not apply."); *SS Richmond*, 2023 WL 1469997 at *3 ("As the nonparty entities failed to claim an interest in the action, as required by Rule 19(a)(1)(B), the Court need not address whether the nonparties met the requirements of (i) or (ii) in this case").

The Fourth Circuit has also noted that where absent parties are "'alleged to have played a central role' in the action at issue, . . . [those parties] 'in many cases will not have interests that warrant protection under Rule 19(a)(1)(B)(i).'" *McKiver v. Murphy -Brown, LLC*, 980 F.3d 937, 952 (4th Cir. 2020) (quoting *Ward v. Apple Inc.*, 791 F.3d 1041, 1050 (9th Cir. 2015), *abrogated on other grounds by Microsoft Corp. v. Baker*, 582 U.S. 23 (2017))). Yet LoanCare does not claim that any allegedly interested parties played a central role here. Although LoanCare alleges its clients and investors may have pecuniary interests in the Tedericks' loan and the putative class's loans, *see* Def.'s Mem. Supp. at 6, 29, a pecuniary interest in potential future loans is insufficient to deem a party necessary to the action. *See McKiver*, 980 F.3d at 952 ("The interest in question should 'be more than a financial stake, and more than speculation about a future event.'" (quoting *Ward*, 791 F.3d at 1050)). LoanCare also fails to explain how the Tedericks' loan implicates its clients or investors' pecuniary interest, considering the Tedericks have already paid it off. Compl. ¶ 30. Further, LoanCare does not show that the allegedly necessary parties would be subject to "inconsistent obligations because of [their] interest" if not joined. Fed. R. Civ. P. 19(A)(1)(B)(ii). LoanCare therefore fails to establish necessity under Rule 19(a)(1)(B).

Because LoanCare fails to show why Fannie Mae, LoanCare's investors and clients, and "potentially thousands" of unidentified servicers and subservicers are necessary parties under Rule 19(a), the Court need not determine whether they are indispensable parties under Rule 19(b). LoanCare's Motion under Rule 12(b)(7) is Denied.

## IV.      CONCLUSION

For the foregoing reasons, LoanCare's Motion to Dismiss is **GRANTED in part and DENIED in part**. LoanCare's Motion to Dismiss Plaintiffs' claim of fraud under West Virginia Code § 46A-2-127 in Count 1 is **GRANTED**, and the Motion to Dismiss Plaintiffs' claim of unjust enrichment in Count 2 is **GRANTED**. Accordingly, those portions of Plaintiff's Complaint are hereby **DISMISSED WITHOUT PREJUDICE**. LoanCare's Motion to Dismiss Plaintiffs' claim of unfair or unconscionable conduct under West Virginia Code § 46A-2-128 in Count 1 is **DENIED**, and the Motion to Dismiss Plaintiffs' claim of conversion in Count 3 is **DENIED**. The Court hereby **GRANTS** Plaintiffs leave to file an amended complaint within **FIFTEEN (15) DAYS** of the date of this Order. The Court **DIRECTS** the Clerk to provide a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
October 2, 2023

Raymond A. Jackson
United States District Judge