**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **GARY TEDERICK and LISA TEDERICK,** **individually and on behalf of all others** **similarly situated,** | |
| **Plaintiffs,** | |
| | **Case No. 2:22-cv-394-RAJ-LRL** |
| *v.* | |
| **LOANCARE, LLC,** | |
| **Defendant.** | |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF

COME NOW, Plaintiffs Gary and Lisa Tederick, and, pursuant to Fed. R. Civ. P. 23 ("Rule 23"), move the Court for an order certifying this case to proceed as a class action; appointing Plaintiffs representatives of the proposed class, defined herein; and appointing Plaintiffs' counsel as counsel for the proposed class. In support of this motion, Plaintiffs provide the following memorandum of law:

**Table of Contents**

TABLE OF CONTENTS --------------------------------------------------------------------------------------i

TABLE OF AUTHORITIES --------------------------------------------------------------------------------ii

I.   INTRODUCTION ------------------------------------------------------------------------------------ 1

II.  LITIGATION BACKGROUND ------------------------------------------------------------------- 3

III. LEGAL STANDARD --------------------------------------------------------------------------- 6

IV.  THE PROPOSED CLASS--------------------------------------------------------------------- 7

V.   ARGUMENTS & AUTHORITIES ------------------------------------------------------------- 9

  A.  THE CLASS IS ASCERTAINABLE--------------------------------------------------------------10

  B.  THE CLASS SATISFIES RULE 23(A)'S REQUIREMENTS-------------------------------------10

    i.   The Class is sufficiently numerous. -------------------------------------------------10

    ii.  Common questions of fact and law exist for the Class. ----------------------------11

    iii. Plaintiffs' claims are typical of those of the Class. -------------------------------13

    iv.  Plaintiffs and their counsel are adequate to represent the Class.------------------14

  C.  THE CLASS SATISFIES RULE 23(B)(3)'S REQUIREMENTS OF PREDOMINANCE AND
  SUPERIORITY --------------------------------------------------------------------------------------17

    i.   Common issues predominate over individualized issues; the elements of the WVCCPA
    claim are susceptible to common proof.------------------------------------------------18

    ii.  A class action is the superior method of adjudicating this matter. -----------------20

VI.  CONCLUSION ----------------------------------------------------------------------------------21

**TABLE OF AUTHORITIES**

C̲ASES̲

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ........................................................ 14, 18

*Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331 (4th Cir. 1998) .................. 13

*Brown v. Nucor Corp.*, 785 F.3d 895 (4th Cir. 2015). ................................................................ 12

*Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993) ..................................... 11

*Deiter v. Microsoft Corp.*, 436 F.3d 461 (4th Cir. 2006) ........................................................... 13

*EQT Prod. Co. v. Adair*, 764 F.3d 347 (4th Cir. 2014) ................................................... 6, 10, 18

*Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147 (1982) ............................................................ 11, 13

*Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003) .......................................... passim

*Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978) ..................................................... 10

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ................................................ 10

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015) ..................................... 20

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) .................................................... 13

*Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ..................................... 6, 18

*Tyson Foods v. Bouaphakeo*, 577 U.S. 442 (2016) ................................................................... 11

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ................................................... 11, 13, 18

S̲TATUTES̲

W. Va. Code § 46A-2-127 ------------------------------------------------------------------------- 11, 19

W. Va. Code § 46A-2-127(d)----------------------------------------------------------------------------11

W. Va. Code § 46A-2-128 ------------------------------------------------------------------------- 11, 19

R̲ULES̲

Fed. R. Civ. P. 12(b)(6)----------------------------------------------------------------------------------- 5

Fed. R. Civ. P. 12(b)(6)-(7) ------------------------------------------------------------------------------ 3

Fed. R. Civ. P. 12(b)(7) ---------------------------------------------------------------------- 4

Fed. R. Civ. P. 19 ---------------------------------------------------------------------------- 4

Fed. R. Civ. P. 23 ------------------------------------------------------------------- 6, 10, 20

Fed. R. Civ. P. 23(a) ------------------------------------------------------------------- 6, 13

Fed. R. Civ. P. 23(a)(1) ------------------------------------------------------------------ 10

Fed. R. Civ. P. 23(a)(2) ---------------------------------------------------------------- 11, 13

Fed. R. Civ. P. 23(a)(3) ------------------------------------------------------------------ 13

Fed. R. Civ. P. 23(b)(3) ---------------------------------------------------------- 6, 17, 18, 20

Fed. R. Civ. P. 9(b) ------------------------------------------------------------------------ 3

## I. INTRODUCTION

As described in prior briefing, Plaintiffs are a hardworking couple who diligently made excess mortgage payments to save on interest and own their home as quickly as possible. Defendant LoanCare, LLC ("Defendant" or "LoanCare") was a sub-servicer of Plaintiffs' home loan. Pursuant to the Note governing their home loan, Plaintiffs had "**the right to make payments of principal at any time before they [were] due.**"[1] Plaintiffs made a number of such principal-only prepayments in an effort to reduce the outstanding loan principal.[2] However, LoanCare didn't *credit* those prepayments as being received on the date they were actually received by Defendant, waiting instead to apply them after crediting Plaintiffs' periodic payments — e.g.:[3]

| Date | Description | Total | P |
|------|-------------|-------|---|
| 02/20/2020 | 03/2020 Payment - Thank You | $875.36 | |
| 02/20/2020 | Additional Principal Payment | $500.00 | |

In this case, even though the stated transaction date was February 20th, LoanCare didn't *credit* the prepayment — the "additional principal payment" — of $500 to Plaintiffs' loan account until *after* it had applied $875.36 of the $1,375.36 total towards the periodic payment on the next scheduled due date. That is, in this example, Defendant took *possession* of Plaintiffs' funds on February 20th but wouldn't *apply* them to their account

---

[1] *See* Second Amended Complaint, <u>Ex. A</u>, Doc. 29-2 ("Note") at ¶ 4 (emphasis added).
[2] *See id.* at ¶¶ 20-21, 25-27.
[3] *See* Declaration of Edith Tharpe, <u>Ex. 1</u>, Doc. 44-1 at 24.

until the March periodic payment was due.[4] So, this practice provided Defendant with multiple sources of unearned interest: (1) LoanCare would have Plaintiffs' periodic payment well in advance of its scheduled due date, and (2) LoanCare would also have Plaintiffs' prepayment but not credit it against principal until after the scheduled due date for the periodic payment. Instead of giving its customers immediate credit for prepayments—in keeping with their "**right to make payments of principal at any time before they are due**" under the Note—Defendant would wait until after it had applied the periodic-payment amount on the scheduled due date to credit prepayments, or "additional principal payments." Defendant was, however, under an obligation to credit prepayments—i.e., amounts to be applied only against principal as no interest has yet accrued on such amounts—upon receipt. Indeed, the point of a prepayment is to eat into principal as soon as possible, not to give the loan servicer the benefit of further unearned interest.

Thus, LoanCare deprived Plaintiffs of the benefit of making prepayments "**at any time before they [were] due**" and collected interest to which it wasn't entitled. If, for example, Plaintiffs' periodic payment was $875 and due on July 1st, and Plaintiffs submitted a $1,200 payment that was received by Defendant on June 20th, with $325 denoted for prepayment, LoanCare automatically credited that entire $1,200 payment as having been received on July 1st, thereby depriving Plaintiffs of their right to make a prepayment "**at any time**"—in this example, on June 20th—and, therefore, some of the

---

[4] *See id.* at, *e.g.*, 25 (". . . your checking account may be debited the same day we receive the check . . . .").

2

time-value of their prepayment funds. While such unearned interest[5] would likely be relatively minor as to any given Class member, that's one of the reasons this matter is highly suitable for class treatment: because LoanCare's ill-gotten gains as to any individual in this regard would likely be so small as to, practically speaking, prohibit individual litigation. Thereby, Plaintiffs and their counsel now move for certification as representatives of a class of LoanCare customers who were similarly harmed by Defendant.

## II.    LITIGATION BACKGROUND

Plaintiffs filed their Complaint on September 20, 2022.[6] The Complaint pleaded causes of action under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), unjust enrichment, and conversion.[7] As to the WVCCPA count, Plaintiffs alleged that Defendant was a "debt collector" for the purposes of that statute.[8] On January 27, 2023, Defendant moved to dismiss, under Fed. R. Civ. P. 12(b)(6)-(7), the entirety of the Complaint.[9] Broadly, Defendant moved to dismiss the WVCCPA count by arguing that Plaintiffs were required to send a pre-suit notice letter;[10] had failed to plead fraud-related allegations with the particularity required by Fed. R. Civ. P. 9(b);[11] had failed to

---

[5] Additionally, given prepayment cash on hand, LoanCare likely held such cash in interest-bearing accounts in addition to charging its customers for small amounts of unearned interest across the same period, thereby acting as a double lender during such periods. Discovery is required into Defendant's compliance and accounting practices.

[6] Complaint, Doc. 1.

[7] *Id.* at ¶¶ 31-58.

[8] *Id.* at ¶ 33.

[9] *See generally* Memo. in Support of Defendant's Motion to Dismiss Complaint, Doc. 16.

[10] *See id.* at 9-10.

[11] *See id.* at 10-12.

plead facts sufficient to support the assertion that Defendant acted unlawfully in collecting debts;[12] and could not, as a matter of law, sustain WVCCPA claims predicated on allegations of misapplied payments by a loan servicer.[13] Defendant moved to dismiss the unjust enrichment claim on the ground that it was barred by the existence of an express contract.[14] And LoanCare moved to dismiss the conversion claim by arguing it was improper under the Gist of the Action doctrine and that Plaintiffs had failed to plead multiple elements of that claim.[15] Finally, pursuant to Fed. R. Civ. P. 19 and 12(b)(7), Defendant argued that the Complaint should be dismissed for failure to join all necessary parties and because joinder of the same wasn't feasible.[16]

On October 2, 2023, the Court issued its Memorandum Opinion and Order as to Defendant's initial Motion to Dismiss ("First Dismissal Order").[17] The First Dismissal Order granted in part and denied in part LoanCare's first Motion to Dismiss.[18] Specifically, the Court held that Plaintiffs' WVCCPA claim could stand as to loan-servicing activity but that they hadn't pleaded fraud-related allegations with sufficient particularity, and granted leave to thereby amend;[19] a WVCCPA pre-suit notice letter wasn't required;[20] Plaintiffs had pleaded facts sufficient to support the assertion that

---

[12] *See id.* at 12-13.
[13] *See id.* at 13-17.
[14] *See id.* at 19-21.
[15] *See id.* at 21-25.
[16] *See id.* at 26-30.
[17] *See generally* Memorandum Opinion and Order, Doc. 25 ("First Dismissal Order").
[18] *See generally id.*
[19] *See id.* at 19-25.
[20] *Id.* at 18-19.

LoanCare had acted unlawfully in collecting debts;[21] Defendant hadn't shown that necessary parties were absent from this litigation;[22] the unjust enrichment claim should be dismissed;[23] and the conversion claim should stand.[24]

On October 17, 2023, pursuant to the First Dismissal Order's grant of leave to amend their pleading, Plaintiffs filed their first Amended Complaint, along with four exhibits.[25] That Amended Complaint contained WVCCPA, unjust enrichment, and conversion claims, along with a footnote stating that Plaintiffs had reasserted the unjust enrichment count for the purpose of showing they'd not "abandoned" it.[26] A week later, Plaintiffs filed their Second Amended Complaint, with the same four exhibits, for the purpose of correcting scrivener's errors in their prior pleading.[27] Thus, the Second Amended Complaint comprised the same three claims as did the Amended Complaint, with the same caveat as to the unjust enrichment count.[28]

On November 8, 2023, Defendant again moved, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss Plaintiffs' WVCCPA claim.[29] On March 21, 2024, per its Memorandum Opinion and Order ("Second Dismissal Order"), the Court dismissed Plaintiffs' conversion count and affirmed its prior dismissal of the unjust enrichment count, while denying

---

[21] *Id.* at 25-26.
[22] *Id.* at 35-38.
[23] *Id.* at 26-29.
[24] *Id.* at 30-35.
[25] *See* Amended Complaint, Doc. 28.
[26] *See id.* at 10 n. 1.
[27] *See* Second Amended Complaint, Doc. 29.
[28] *See id.* at 10 n. 1.
[29] *See* Memorandum in Support of Defendant's Motion to Dismiss Second Amended Complaint, Doc. 32 at 1.

LoanCare's second Motion to Dismiss as to the WVCCPA.[30] Therefore, Plaintiffs move here to certify the proposed class with regard to that sole remaining claim.

## III.  LEGAL STANDARD

District courts enjoy wide discretion in deciding whether to certify a class action, within the confines of Rule 23, a matter must satisfy four factors in order to be certified as a class action: (1) numerosity of the parties; (2) common issues of fact or law; (3) typicality of the plaintiffs' claims; and (4) adequacy of representation.[31] Additionally, where a plaintiff seeks certification under Rule 23(b)(3), as Plaintiffs do here, they must meet the two requirements set forth in that provision: predominance and superiority.[32] "If a lawsuit meets these requirements, certification as a class action serves important public purposes. In addition to promoting judicial economy and efficiency, class actions also afford aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions."[33]

On a Rule 23 motion, the Court "should consider merits questions to the extent that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."[34] "The likelihood of the plaintiffs' success on the merits, however, is not relevant to the issue of whether certification is proper."[35] Finally, "federal courts should give Rule 23 a liberal rather than a restrictive construction, adopting a

---

[30] *See generally* Memorandum Opinion and Order, Doc. 40 ("Second Dismissal Order").
[31] *See generally* Fed. R. Civ. P. 23(a).
[32] *EQT Prod. Co. v. Adair*, 764 F.3d 347, 365 (4th Cir. 2014) (citing Rule 23(b)(3)).
[33] *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 424 (4th Cir. 2003) (internal quotation omitted).
[34] *Adair*, 764 F.3d at 358 (internal quotation omitted).
[35] *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 319 (4th Cir. 2006).

standard of flexibility in application which will in the particular case best serve the

ends of justice for the affected parties and . . . promote judicial efficiency."[36]

## IV.  THE PROPOSED CLASS

In their Second Amended Complaint, Plaintiffs pleaded that they sought to

represent the following class:[37]

> [A]ll West Virginia consumers who, on or after September 20, 2018, made prepayments on the unpaid principal of mortgage loan serviced by LoanCare, where the consumer made the prepayment and scheduled monthly payment simultaneously before the due date of the scheduled monthly payment, but LoanCare failed to apply the prepayment to the unpaid princip[al] until after it applied the scheduled monthly payment.

Here, Plaintiffs propose, and seek to certify, a slightly modified class definition

(hereinafter, the "Class"):

> **All natural persons who were residing in West Virginia and credited by LoanCare with an additional principal payment on a home loan before the next scheduled periodic-payment due date, at any time from September 20, 2018, through the present**.

The Class definition embraces effectively the same, if not the exact same, putative

members as the one set forth in the Second Amended Complaint. This modified version,

however, is slightly simpler and reflects LoanCare's accounting practices as shown in

Defendant's own exhibits. Specifically, as shown in the monthly statements sent by

LoanCare to Plaintiffs, Defendant would classify prepayments (i.e., payments of

principal only) as **"additional principal payment[s]**."[38] Thus, per Defendant's own billing

denotations, an "additional principal payment" *is* a "prepayment," as used in prior record

---

[36] *Gunnells*, 348 F.3d at 424 (internal quotation omitted).
[37] Second Amended Complaint, Doc. 30 at ¶ 63.
[38] Declaration of Edith Tharpe, <u>Ex. 1</u>, Doc. 44-1 at 2, 4, 6, 8, *et seq.* (emphasis added).

documents; these should be treated synonymously. But Plaintiffs adopt the convention—"additional principal payment"—used in the monthly statements for the Class definition because that's LoanCare's own denotation relative to the accounting line where it stated the crediting of prepayments, as shown:[39]

| Transaction Activity (05/05/2020 to 06/02/2020) | | | | | |
|---|---|---|---|---|---|
| Date | Description | Total | Principal | Interest | |
| 05/26/2020 | 06/2020 Payment - Thank You | $875.36 | $827.70 | $47.66 | |
| 05/26/2020 | Additional Principal Payment | $550.00 | $550.00 | | |

**So, in this example, Defendant possessed $875.36 for the upcoming periodic payment and $550 for a principal-only payment on May 26, 2020, but didn't** *credit* **those amounts as having been received until June 2, 2020**. Thereby, *all* "additional principal payment[s]," per Plaintiffs' allegations, were credited too late by LoanCare (i.e., after the periodic payment, rather than when accepted by Defendant).[40] This is because, per LoanCare's accounting practices, an "additional principal payment" could only be

---

[39] *See id.* at 30.

[40] This is fundamentally because Defendant, regardless of when it received and/or deposited a borrower's payment check, would first apply it towards any periodic payment(s) owing, which would be credited as of the periodic-payment due date. Thus, an "additional principal payment" was definitionally constrained to be just that—a principal-only payment, or "prepayment"—and couldn't exist, according to Defendant's accounting practices, until outstanding periodic payments had been satisfied—anything less than the periodic payment amount would be classified as a partial periodic payment. As emphasized by Plaintiffs, that practice improperly constrained Plaintiffs' ability to "make payments of principal at any time before they [were] due," per the Note. In contrast, *periodic* payments were constrained to being *credited* on the scheduled due date, in line with the existing amortization schedule, though Defendant could deposit checks immediately upon receipt.

credited *after* the periodic-payment amount had been applied when the payment had been submitted in advance of the next scheduled due date. So, the gap between prepayment receipt and periodic-payment date was one during which Defendant enjoyed unearned interest while also constraining borrowers' right to pay down principal at any time. Thereby, too, the Class definition is predicated on objective criteria in the possession of LoanCare—most essentially, basic accounting records like those shown above, along with complete principal and interest calculations—and doesn't significantly expand, if it does so at all, the scope of discovery required by Plaintiffs.

## V.   ARGUMENTS & AUTHORITIES

As detailed below, this case is tailor-made for class-action treatment. This is because it concerns a simple business policy and practice of Defendant's whose unfairness is plain: LoanCare has, as a matter of course, improperly delayed the crediting of prepayments made by borrowers of home loans it serviced. This matter is also well-suited for class-action treatment because it concerns relatively minor damages to individuals that were nonetheless the result of Defendant's bad-faith conduct, and which relatively minor individual damages aggregated to LoanCare's unjust benefit. Likewise, the class-action vehicle entails the ideal procedural method by which to adjudicate this case efficiently and fairly across the many consumers harmed by LoanCare's unlawful accounting practices.

## A. The Class Is Ascertainable

Ascertainability essentially refers to the requirement that the Class members be identifiable by reference to objective criteria.[41] Likewise, the Class must be defined such that its definition is devoid of embedded legal conclusions. Thereby, the Class should comprise the same members regardless of how merits questions are ultimately answered. Here, again, Plaintiffs seek to certify the Class defined as:

> **All natural persons who were residing in West Virginia and credited by LoanCare with an additional principal payment on a home loan before the next scheduled periodic-payment due date, at any time from September 20, 2018, through the present**.

The Class members are, per this definition, readily ascertainable because all of the parameters—name, state of residency, dates, and prepayments credited—needed to identify them are objective and in the possession of Defendant.

## B. The Class Satisfies Rule 23(a)'s Requirements

### i.   The Class is sufficiently numerous.

Pursuant to Rule 23(a)(1), Plaintiffs must show that the Class "is so numerous that joinder of all members is impracticable." In their Second Amended Complaint, Plaintiffs pleaded, "the Class consists of **approximately 5,000 consumers** for whom LoanCare serviced a mortgage loan on residential property in West Virginia and who have a mailing address in West Virginia."[42] While "[t]here is no mechanical test for determining whether in a particular case the requirement of numerosity has been satisfied,"[43] there's

---

[41] *See Adair*, 764 F.3d at 358; *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 592-93 (3d Cir. 2012).

[42] Second Amended Complaint, Doc. 30 at ¶ 64 (emphasis added).

[43] *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34, 35 (4th Cir. 1978).

no question that 5,000 individuals handily exceeds whatever number of members could be practically joined to this action.[44]

### ii. Common questions of fact and law exist for the Class.

Pursuant to Rule 23(a)(2), Plaintiffs must demonstrate that "there are questions of law or fact common to the class." "[A] common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof"[45] and "[c]lass relief is peculiarly appropriate when the issues involved are common to the class as a whole and when they turn on questions of law applicable in the same manner to each member of the class."[46] **"For purposes of Rule 23(a)(2), even a single common question will do."[47]**

In addition to definitional elements, such as "claim" and "debt collector," Plaintiffs' WVCCPA claim entails the following elements: LoanCare violated W. Va. Code § 46A-2-127, including § 46A-2-127(d) specifically, by, respectively, using "any fraudulent, deceptive or misleading representation or means to collect or attempt to collect claims or to obtain information concerning consumers" and making "any false representation or implication of the character, extent or amount of a claim against a consumer."[48] Additionally, Plaintiffs allege LoanCare violated W. Va. Code § 46A-2-128 by "using 'any

---

[44] *See, e.g., Gunnells*, 348 F.3d at 456 (noting trial court certified sub-class of only 11 members); *Cent. Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 183 (4th Cir. 1993)("some 480 potential class members would easily satisfy the numerosity requirement").
[45] *Tyson Foods v. Bouaphakeo*, 577 U.S. 442, 453 (2016)(internal quotation omitted).
[46] *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 155 (1982)(internal quotations omitted).
[47] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011)(internal quotations and punctuation omitted)(emphasis added).
[48] *See* Second Amended Complaint, Doc. 30 at ¶¶ 32-45.

unfair or unconscionable means to collect or attempt to collect any claim.'"[49] As described herein and in the Second Amended Complaint, Plaintiffs complain that Defendant didn't credit their prepayments until applying their periodic payment at the next scheduled due date.[50] There's no reason at all to believe that LoanCare would use different accounting conventions for similarly situated borrowers—i.e., Defendant didn't timely credit some prepayments while waiting until the periodic payment was due to credit others—such that Plaintiffs' dispute is both simple and common to the Class. Common questions of fact and law thereby include, but aren't limited to:

- Whether LoanCare is a "debt collector" under the WVCCPA;
- Whether home-loan prepayments must be applied upon receipt to loan principal under the applicable loan agreement(s);
- Whether LoanCare applied home-loan prepayments to loan principal upon receipt;
- Whether LoanCare acted fraudulently, deceptively, or misleadingly by declining to credit home-loan prepayments upon receipt; *and*
- Whether LoanCare acted unfairly or unconscionably by declining to credit home-loan prepayments upon receipt.

As explained further below, these points are all susceptible to common proof and predominate over any individualized issues that may exist. This is natural because, again, Plaintiffs dispute a corporate policy and practice that treated them the same as other Class members in the germane regard. Answers to these questions will "drive the litigation"[51] given that, if the factfinder determines Defendant acted fraudulently, deceptively, misleadingly, unfairly, and/or unconscionably in its accounting of principal-only

---

[49] *See id.* at ¶¶ 46-48.
[50] *See id.* at, *e.g.*, ¶ 41.
[51] *See Brown v. Nucor Corp.*, 785 F.3d 895, 909 (4th Cir. 2015).

payments, then that answer will be common as the complained-of conduct will be definitionally common across Plaintiffs and the Class members, and will have caused them injury in the same way.

### iii. Plaintiffs' claims are typical of those of the Class.

Per the Supreme Court, "'The commonality and typicality requirements of Rule 23(a) tend to merge.'"[52] This phenomenon is unsurprising given that "typicality" in the Rule 23 context means the extent to which Plaintiffs' claims fairly represent, or "interrelate" with, those of the putative Class members.[53] That is, given commonality of questions of facts and/or law per Rule 23(a)(2), (a)(3) seeks to assure that the *claims* of Plaintiffs are also reasonably common to the class. "The essence of the typicality requirement is captured by the notion that 'as goes the claim of the named plaintiff, so go the claims of the class.'"[54]

Here, Plaintiffs readily satisfy Rule 23(a)(3) given that they seek to certify the same WVCCPA claim relative to the same alleged conduct by Defendant.[55] Plaintiffs, like the Class members, are West Virginia residents that made home-loan prepayments to LoanCare.[56] Plaintiffs assert the same legal theory, and same source of injury — Defendant was compelled to immediately apply prepayments but didn't, thereby injuring Plaintiffs

---

[52]*Dukes*, 564 U.S. at 350 n.5 (quoting *Gen. Tel. Co. of SW v. Falcon*, 457 U.S. 147, 157-58 (1982)).

[53] *See, e.g., Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006).

[54] *Id.* (quoting *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998)(quoting *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)(internal quotation marks omitted))).

[55] *See* Second Amended Complaint, Doc. 30 at ¶ 63.

[56] *See id.*

and the Class members via unearned interest charges[57]—on behalf of themselves and the Class such that their claim is entirely typical of the Class's claim.

### iv. Plaintiffs and their counsel are adequate to represent the Class.

Finally, as to Rule 23(a), Plaintiffs satisfy its requirement of adequate representation, both as to themselves and their counsel. Rule 23(a)'s inquiry into adequacy simply "serves to uncover conflicts of interest between named parties and the class they seek to represent."[58] Here, there's no evidence in the record of such a conflict and no reason to believe one exists; Plaintiffs are ordinary people who seek to recover some interest charges on behalf of themselves and a class of other consumers. Additionally, Plaintiffs have shown that they're dedicated to advancing this litigation by timely engaging in motion practice and amending their pleadings.

Plaintiffs' counsel are also adequate to be appointed Class counsel. The inquiry as to counsel's adequacy fundamentally concerns resources to prosecute a class action, as well as competence and experience in relevant litigation. Here, proposed Class counsel don't have interests contrary to, or in conflict with, those of the Class members, and have the financial resources to ensure adequate representation. Plaintiffs' counsel are highly experienced in consumer and personal-injury litigation, including class actions and mass torts, including as lead class counsel, at both the federal and state levels, across multiple jurisdictions.

---

[57] *See id.* at ¶ 65.
[58] *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 594 (1997).

More specifically, Plaintiffs' counsel, Stephen G. Skinner, has served as counsel in class actions or mass torts including *Ramey v. BLI Rentals, LLC*, Civil Action No. 16-C-298 (Cir. Ct. Jefferson Cnty., W. Va.); *Jefferson, Berkeley, Morgan and Pocahontas Cntys., City of Charles Town In Re: Nat'l Prescription Opiate Lit.*, Multi-Dist. Lit. 1:17-md-02804-DAP; *Dillow et al. v. Polk et al.*, Mountain State Univ. Lit. 12-C-9000 (Mass Lit. Panel W. Va.); *Harner v. Mast Drug Co., Inc.*, Civil Action No. 16-C-258 (Cir. Ct. Jefferson Cnty., W. Va.)(lead class counsel); *Long v. Schewel Furniture Co., Inc.*, Civil Action No. 17-C-138 (Cir. Ct. Jefferson Cnty., W. Va.)(lead class counsel); *E.Z. v. Eastern Panhandle Federal Credit Union*, Civil Action No. 21-C-23, Cir. Ct. Jefferson Cnty, W.Va.) (Co—Lead Class Counsel); *Lori Murray v. Steve Kemper Builder, LLC,* CC-19-2021-C-39 Cir Ct. Jefferson Cnty)(Lead Counsel); Mr. Skinner, amongst other considerations, is also a member of the West Virginia, New York, Maryland, and District of Columbia bars; licensed to practice before the United States Supreme Court, United States Court of Appeals for the Fourth Circuit, Northern and Southern Districts of West Virginia, District of Maryland, and Southern District of New York; member of the American Association for Justice and is to serve on its board and executive committee beginning in July 2024, West Virginia Association for Justice, and National Association of Consumer Advocates; and possesses over 29 years of litigation experience. As such, Plaintiffs' counsel is adequate to represent the Class.

Plaintiffs' counsel, Anthony Majestro, with 35 years of litigation experience, has served as class counselor in leadership roles in mass tort cases, including: *In re: National Prescription Opiate Litigation*, MDL 2804 (Northern District of Ohio) (currently serves as

Co-Chair of the Law and Briefing Committee in the nationwide opioid litigation and on trial teams throughout the country including W. Va., Ohio, New Mexico, Nevada and Michigan); *Good v. American Water,* Civil Action No. 2:14-cv-01374 (S.D. W.Va.) (Class Counsel); *Hurley v. Messer, Wayne Co BOE* (S. D. W.Va.) (Co-Lead Class Counsel); *Womack v. Virginia Meadows LLC, et al.*, Civil Action No. 3:16-9949 (Putnam County, W. Va.) (Co-Lead Class Counsel); *Barchiesi et al. v. Charlotte School of Law, LLC, et al.*, Civil Action No. 3:16-cv-00861 (W.D. N.C.) (Co-Lead Class Counsel and Lead Appellate Counsel); *Pauley v. Hertz Corporation, Inc. et al.*, Civil Action No. 13-C-236 (Wayne County, W. Va.) (Lead Class Counsel); *Bryant v. Chase Bank USA, N.A.*, Civil Action No. 07-C-1675 (Kanawha County, W.Va. 2010) (Class Counsel); *Withrow et al. v. Enterprise Holdings, Inc., et al.*, Civil Action No. 10SL-CC01712 (Circuit Court of St. Louis County, MO) (Lead Class Counsel); *Stepp, et al v. West Virginia Oil & Lube LLC, et al.*, Civil Action No. 02-C-296 (Mingo County, W. Va.) (Class Counsel); *FIA Card Services, N.A. FKA MBNA v. Camastro*, Civil Action No. 09-C-233 (Ohio County, W. Va.) (Class Counsel); *In re Diet Drugs,* Civil Action No. 97-C-204 (1-11) Brooke County, W. Va. ) (Class Counsel); *Community Health Assn. v. Lucent Tech., Inc.,* Civil Action No. 99-C-948 (Kanawha County, W.Va.) (Class Counsel); *In re Rezulin*, Civil Action No. 00-C-1180-H (Raleigh County, W.Va.) (Class Co-Counsel); *McCallister, et al. v. Purdue Pharma LP*, Civil Action No. 01-C-238 (Putnam County, W. Va.) (Class Counsel); *State ex rel. Bell Atlantic-West Virginia, Inc. v. Ranson*, 497 S.E.2d 755 (W. Va. 1997) (Class Counsel); *Ysbrand v. DaimerChrysler Corp.*, 81 P.3d 618, (Okla. 2003) (Class Counsel). Mr. Majestro is a member of the West Virginia bar; is licensed to practice before the United States District Court for the Southern and Northern Districts of West Virginia,

the Second and Fourth Circuits, and the United States Supreme Court. He is a member of the West Virginia Association for Justice, where he serves as a member of the WVAJ Board of Governors, the organization's Legislative Chair, and a member of the Executive Committee. He is a a member of Board of Governors for the American Association of Justice. Previously he was a member of the West Virginia Bar Association's ad hoc committee on Judicial Selection and served as a member of the Advisory Committee on Civil Rules created by West Virginia's Chief Justice which recently proposed extensive updates to the West Virginia Rules of Civil Procedure (personally drafting the update to West Virginia's class action rule) which will go into effect on January 1, 2024. As such, Plaintiffs' Counsel, Anthony Majestro, is adequate to represent the Class.

### C. The Class Satisfies Rule 23(b)(3)'s Requirements of Predominance and Superiority

Because Plaintiffs seek to certify a damages class pursuant to Rule 23(b)(3), they must also show that common issues of fact or law predominate over individualized issues and the class vehicle is the superior way to proceed here.[59] Given, again, that this matter—as one embracing thousands of people that suffered the same type of out-of-pocket injury, generally in small amounts, attributable to the same accounting practice—naturally lends itself to class treatment, Plaintiffs are, as explained below, also able to satisfy Rule 23(b)(3)'s criteria.

---

[59] *E.g.*, *Gunnells*, 348 F.3d at 425.

### i. Common issues predominate over individualized issues; the elements of the WVCCPA claim are susceptible to common proof.

"The predominance requirement is similar to but more stringent than the commonality requirement of Rule 23(a)."[60] Rule 23(b)(3)'s predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."[61] In this regard, common issues can still predominate even where there are individualized issues of fact or law.[62] If "common questions predominate over individual questions as to liability, courts generally find the predominance standard of Rule 23(b)(3) to be satisfied."[63] Individual *damage* determinations do **not** "destroy[] commonality, typicality, or predominance, or otherwise foreclose[] class certification."[64]

Here, common issues predominate because this case complains of a simple, common practice.[65] Crucially, that common practice is "the controversy at the heart of the litigation,"[66] having resulted in a like injury to Plaintiffs and the putative Class members: the loss of some interest owing to Defendant's prepayment policy.[67] To reprise, here are some of the common questions present in this matter:

- Whether LoanCare is a "debt collector" under the WVCCPA;

---

[60] *Thorn*, 445 F.3d at 319 (internal quotation omitted).

[61] *Amchem Prods.*, 521 U.S. at 623-24.

[62] *See, e.g., Adair*, 764 F.3d at 367; *Thorn*, 445 F.3d at 328-29.

[63] *Gunnells*, 348 F.3d at 428 (internal quotation omitted).

[64] *Id.* at 427-28.

[65] *See, e.g., Adair*, 764 F.3d at 366-67 ("The defendants have highlighted a number of uncommon practices that might cause individual issues to predominate.").

[66] *See id.* at 366 ("**The predominance inquiry focuses not only on the existence of common questions, but also on how those questions relate to the controversy at the heart of the litigation.**" (emphasis added)).

[67] *See Dukes*, 564 U.S. at 350 ("Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury")(internal quotation omitted)).

- Whether home-loan prepayments must be applied upon receipt to loan principal under the applicable loan agreement(s);
- Whether LoanCare applied home-loan prepayments to loan principal upon receipt;
- Whether LoanCare acted fraudulently, deceptively, or misleadingly by declining to credit home-loan prepayments upon receipt; *and*
- Whether LoanCare acted unfairly or unconscionably by declining to credit home-loan prepayments upon receipt.

In order to prevail on their WVCCPA claim, Plaintiffs must essentially show that they made at least one "additional principal payment" (otherwise known as a prepayment, or principal-only payment) and that Defendant's treatment of that additional principal payment was somehow fraudulent, deceptive, misleading, unfair, or unconscionable, per the factfinder.[68] Plaintiffs have identified the policy and practice of which they complain—delayed attribution of additional principal payments made before the scheduled periodic-payment due date[69]—and have defined the Class to constitute only West Virginia consumers that made such prepayments on home loans. That is, the Class definition addresses common conduct and embraces only those putative members who have suffered, pursuant to the same legal theory, a like injury. Similarly, that legal theory would rely on common proof—most notably, template loan agreements, basic accounting statements showing when "additional principal payments" were received and credited to a member's account, and perhaps expert testimony—to establish Defendant's liability under the WVCCPA, as well as injury to Plaintiffs and the Class. Definitionally, if LoanCare is a "debt collector" in West Virginia then it would be so for Plaintiffs and the

---

[68] *See* W. Va. Code §§ 46A-2-127, 46A-2-128.
[69] *See* Second Amended Complaint, Doc. 30 at ¶ 63.

entire Class and, if home-loan debts are "claims," then they would be so for Plaintiffs and the entire Class. All this is to say that common issues predominate across complained-of conduct, legal theory/claim, nature of injury, *and* source of proof—and there's nothing, given the straightforward nature of Plaintiffs' dispute, that could reasonably act to destroy such predominance.

### ii.    A class action is the superior method of adjudicating this matter.

As already alluded to, there can be no serious question that the class-action vehicle is *the* superior method of adjudicating a matter implicating perhaps 5,000 individuals relative to a uniform corporate policy resulting in common, small monetary injuries—this is precisely the sort of action contemplated by Rule 23. More specifically, Rule 23(b)(3) explicitly concerns itself with the fairness and efficiency of litigation: plainly, thousands of lawsuits over relatively small amounts would be wildly inefficient *and* risk inconsistent decisions. Further, "**there is a strong presumption in favor of a finding of superiority where, as here, the alternative to a class action is likely to be no action at all for the majority of class members.**"[70] Here, that would undoubtedly be the case given the difficulty of detecting Defendant's practice of late-crediting prepayments, as well as, again, relatively small amounts of individual damages. Relatedly, member interest—given the technical, uniform nature of the disputed conduct and small individual damages—in personally controlling litigation would effectively be nonexistent.[71] Thus, for effectively every germane reason, this matter would be best advanced as a class action.

---

[70] *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 218 (E.D. Va. 2015)(emphasis added).
[71] *See id.*

## VI.    CONCLUSION

For the reasons stated above, the Court should GRANT the Motion, thereby certifying the Class, Plaintiffs as Class representatives, and Plaintiffs' counsel as Class counsel.

Respectfully submitted,

*/s/ Andrew C. Skinner*
Andrew C. Skinner, Esq. (VSB #92810)
Stephen G. Skinner, Esq. (*admitted pro hac vice*)
SKINNER LAW FIRM
P.O. Box 487
Charles Town, WV 25414
T: (304) 725-7029
F: (304) 725-4082
andrewskinner@skinnerfirm.com
sskinner@skinnerfirm.com

Anthony Joseph Majestro(*admitted pro hac vice*)
POWELL & MAJESTRO PLLC
405 Capitol St., Ste. P1200
Charleston, WV 25301
amajestro@powellmajestro.com

*Attorneys for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

| | |
|---|---|
| **GARY TEDERICK and LISA TEDERICK,** **individually and on behalf of all others** **similarly situated,** | |
| **Plaintiffs,** | |
| | **Case No. 2:22-cv-394-RAJ-LRL** |
| *v.* | |
| **LOANCARE, LLC,** | |
| **Defendant.** | |

**CERTIFICATE OF SERVICE**

      I hereby certify that, on July 18 2024, a true and correct copy of the foregoing **PLAINTIFFS' MOTION FOR CLASS CERTIFICATION, APPOINTMENT OF CLASS REPRESENTATIVES, AND APPOINTMENT OF CLASS COUNSEL AND MEMORANDUM OF LAW IN SUPPORT THEREOF** was filed with the Clerk of Court via the CM/ECF system and that a copy of the same has thereby been served upon all counsel of record.

                              */s/ Andrew C. Skinner*
                              Andrew C. Skinner (VSB #92810)