**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**GARY TEDERICK and LISA TEDERICK,**
**individually and on behalf of all others**
**similarly situated,**

      **Plaintiffs,**

      **v.**                                **CIVIL ACTION NO. 2:22-cv-394**

**LOANCARE, LLC,**

      **Defendant.**

*MEMORANDUM OPINION AND ORDER*

Before the Court is LoanCare, LLC's ("LoanCare") Motion for Summary Judgment and Memorandum in Support. ECF Nos. 74, 75. ("Def. Mot") ("Mem. Supp."). Plaintiffs Gary and Lisa Tederick ("the Tedericks") oppose the Motion. ECF No. 90. ("Resp. Opp'n"). LoanCare replied. ECF No. 95. ("Reply"). Upon review, the Court finds that a hearing on this Motion is not necessary. *See* E.D. Va. Local Civ. R. 7(J). This matter is now ripe for judicial determination. For the reasons stated herein, LoanCare's Motion for Summary Judgment is **GRANTED**.

## I.   FACTUAL AND PROCEDURAL HISTORY

On September 20, 2022, the Tedericks filed a Complaint seeking class action status and alleging that LoanCare violated fair debt collection provisions of the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-2-122 *et seq.* ("WVCCPA" or "the Act"), benefited from unjust enrichment, and converted their funds. Compl., ECF No. 1. On January 27, 2023, LoanCare filed its first motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim and Federal Rule of Civil Procedure 12(b)(7) for failure to join necessary parties under Rule 19. ECF No. 15. On October 2, 2023, the Court granted LoanCare's Rule 12(b)(6)

1

motion on the Tedericks' fraud-based claims in Count I and their Unjust Enrichment claim in Count II. *See* Order, ECF No. 25 ("Order on First Motion to Dismiss"); *see Tederick v. LoanCare, LLC*, No. 2:22-cv-394, 2023 WL 6465404 (E.D. Va. Oct. 2, 2023). The Court dismissed those claims without prejudice and granted leave to amend. The Court denied LoanCare's Federal Rule of Civil Procedure 12(b)(6) Motion on the Tedericks' remaining statutory claims in Count I and their conversion claim in Count III. The Court also denied LoanCare's Federal Rule of Civil Procedure 12(b)(7) motion.

On October 25, 2023, the Tedericks filed a Second Amended Complaint. ECF No. 30 ("SAC"). On November 8, 2023, LoanCare filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). ECF No. 31. The Tedericks responded in opposition on November 22, 2023. ECF No. 37. LoanCare replied on December 8, 2023. ECF No. 38. On March 21, 2024, the Court granted the Motion to Dismiss on Counts Two and Three of the Second Amended Complaint and denied the Motion on Count One. ECF No. 40.

The Tedericks built their home in 2002 in Hedgesville, West Virginia. SAC ¶ 7. On March 4, 2004, they decided to refinance their home by taking out a loan from Mid-States Financial Group, Inc. using a Note backed by a Deed of Trust and held by the Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶¶ 7–9; SAC Ex. A at 1, ECF No. 30-2 ("Note"); SAC Ex. B, ECF No. 30-3 ("Deed of Trust"). The terms of the loan required the Tedericks to make scheduled monthly payments of $875.36 to the Note Holder beginning May 1, 2004, with any remaining amounts owed in full on April 1, 2034. Note ¶ 3. Interest was to be "charged on unpaid principal until the full amount of Principal has been paid." *Id.* ¶ 2.

The Note states that "[e]ach monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal." *Id.* ¶ 3. The Tedericks were entitled to "make

2

payments of Principal at any time before they are due. A payment of Principal only is known as a 'Prepayment.'" *Id.* ¶ 4. But the Tedericks "[could] not designate a payment as a Prepayment if [they had] not made all the monthly payments due under the Note," and they had to notify the lender in writing when making a Prepayment. *Id.* Upon receipt of a Prepayment, the Note Holder "will use [the] Prepayments to reduce the amount of Principal" owed. *Id.* The Note Holder is also authorized "to apply [a] Prepayment to the accrued and unpaid interest on the Prepayment amount before applying [the] Prepayment to reduce the Principal amount of the Note." *Id.* The Deed of Trust further specifies that "[v]oluntary prepayments shall be applied first to any prepayment charges and then as described in the Note." Deed of Trust § 2; SAC ¶ 11.

The Tedericks frequently made Prepayments during the life of the loan. SAC ¶ 12. When making payments, the Tedericks often wrote one check containing their monthly payment amount and a Prepayment amount, specifying in the memo line that a Prepayment amount was included in the total. *Id.* ¶ 13. According to the Second Amended Complaint, the loan accrued scheduled interest, meaning the Tedericks did not owe interest on the loan until the scheduled monthly payments were due. SAC ¶ 15.

The Note and Deed of Trust are contained on "Fannie Mae/Freddie Mac UNIFORM INSTRUMENT[S]." *See generally* Note; Deed of Trust. The Fannie Mae Servicing Guidelines ("Guidelines") address the order in which a lender or servicer should apply scheduled monthly payments and Prepayments. SAC ¶ 16. Guideline F-1-09 provides that when a borrower includes a Prepayment "with the scheduled monthly payment," the loan servicer must "apply the scheduled monthly payment first, then apply the [Prepayment]."[1] *Id.*; SAC Ex. C at 1–2, ECF No. 30-3. In

---

[1] The Guidelines use the term "curtailment," which the Tedericks equate to "prepayment" in their Second Amended Complaint. *See* SAC Ex. C at 1–2; SAC ¶ 16. As indicated above, Guideline C-1.2.-01 also refers to an "additional principal payment" as a "principal curtailment." SAC Ex. D at 7; *see also* SAC ¶ 18.

contrast, when the borrower submits a Prepayment at "any other time of the month, separately," the loan servicer must "apply the [Prepayment] first, then apply the next scheduled monthly payment." SAC ¶ 16; SAC Ex. C at 1–2. Guideline C-1.1-01 instructs servicers to "[a]pply scheduled payments, including late charges (if applicable) in the order specified in the security instrument. Note: When multiple payments are received, each payment must be applied separately." SAC Ex. D at 1, ECF No. 30-4; *see* SAC ¶ 17. Finally, Guideline C-1.2.-01 provides that "[t]he servicer must immediately accept and apply an additional principal payment (referred to as a principal curtailment) identified by the borrower as such for a current mortgage loan." SAC ¶ 18; SAC Ex. D at 7. The Tedericks allege these Guidelines mean that when a borrower makes a Prepayment any time before the due date of a scheduled monthly payment, the servicer must immediately apply the Prepayment to the unpaid principal. SAC ¶ 19.

Between 2005 and 2020 the Tedericks made 180 payments containing both a scheduled monthly payment and a Prepayment ("combined payment") before the monthly payment due date. *Id.* ¶ 20. For at least 152 of those payments, a servicer failed to apply the Prepayment and scheduled monthly payment in the correct order. *Id.* ¶ 21. Instead, the servicer applied the scheduled monthly payment, then the Prepayment. *Id.* ¶ 22.

Around April 2019, LoanCare became the subservicer of the Tedericks' mortgage loan and began accepting and applying their loan payments.[2] *Id.* ¶ 24. That month, the Tedericks contacted LoanCare to explain that previous servicers misapplied their Prepayments and to request that

---

[2] LoanCare defines "subservicer" as an "entity to which servicers who either own entire loans or own a loan's master servicing rights ('MSRs') can outsource servicing activities related to a mortgage loan." ECF No. 16 at 5 ("Def.'s First Mem. Supp."); ECF No. 16-1 ¶¶ 2–3 ("First Tharpe Decl."). As a subservicer, LoanCare "accepts receipts of borrowers' payments of principal and interest and funds are passed through to . . . investors and LoanCare's clients." First Tharpe Decl. ¶ 4. LoanCare subserviced the Tedericks' loan for client New Residential Mortgage LLC, and Fannie Mae was the investor on the loan. Def.'s First Mem. Supp. at 6; First Tharpe Decl. ¶ 5. The Court provides these assertions of fact from LoanCare's filings to give context to the Tedericks' allegations.

LoanCare correct their account to accurately reflect the amount of interest owed on the loan. *Id.* ¶ 25. The Tedericks spoke to a Loan Care representative named "Tiffany," who allegedly assured them that the problem was rectified. *Id.* Yet LoanCare made no changes to the account and went on to apply the Tedericks' final sixteen combined payments in the order of the scheduled monthly payment first and the Prepayment second. *Id.* ¶¶ 26–28.

The Tedericks made "repeated attempts to have the misapplications rectified," but LoanCare was not responsive. *Id.* ¶ 31. On or around September 5, 2020, the Tedericks requested a payoff statement from LoanCare, which LoanCare provided on September 14, 2020. *Id.* ¶ 31. On or around September 21, 2020, the Tedericks paid the loan in full. *Id.* ¶ 30. Because LoanCare misapplied their combined payments, the Tedericks claim LoanCare charged them undue interest. *Id.* ¶¶ 23, 30.

## II.   LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). When considering a motion for summary judgment, a court must view the facts—and inferences derived from the facts—in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

When the nonmoving party bears the burden of proof at trial, the nonmoving party's response must "go beyond the pleadings" and utilize affidavits, depositions, answers to interrogatories, admissions on file, etc. to "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal citations omitted). A nonmoving party must offer more than unsupported speculation or conclusory statements to

withstand summary judgment. *Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411–12 (4th Cir. 1986); *see also Anderson*, 477 U.S. at 249–250 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). Accordingly, summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an essential element to that party's case." *Celotex*, 477 U.S. at 322–323.

Evidence produced for or against a motion for summary judgment must be admissible at trial, although it does not need to be produced in an admissible form. *Id.* at 323–324. Moreover, pursuant to Local Civil Rule 56(b):

> "Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute. In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

L. Civ. R. 56(b). Accordingly, this Court must decline to consider evidence that is inadmissible or does not comport with Local Civil Rule 56(b), including statements that are purportedly supported by inaccurate citations to the record, not supported by citations at all, or otherwise fail to controvert a material fact alleged by Defendant.

## III.    DISCUSSION

The issue for the Court to consider is simple: the Court must determine whether the Tedericks can obtain relief under the WVCCPA. For the reasons stated below, the Tedericks

cannot. There is no genuine issue as to any material fact and LoanCare is entitled to judgment as a matter of law. Thus, Summary Judgment will be entered in LoanCare's favor.

## A. The WVCCPA's Language

The Tedericks argue that LoanCare's collection of amounts under the Tedericks' mortgage loan violates the fair debt collection provisions of the WVCCPA. SAC ¶ 33. Specifically, the Tedericks argue that LoanCare has violated Sections 46A-2-127(d) and 46A-2-128. *Id.* at 39, 48.

LoanCare argues that they are entitled to judgment in their favor because there has been no violation of the WVCCPA, let alone an intentional violation. Mem. Supp. at 17. They argue that there was no "legal proceeding" in which a false representation was made. *Id.* (citing § 46A-2-127(d)). LoanCare further argues that interest was expressly authorized by the terms of the Tedericks' note, and that charging interest cannot violate the WVCCPA. *Id.* at 18. Lastly, LoanCare argues that two cases from district courts in West Virginia in which the courts rejected WVCCPA claims are substantially similar to this case. *Id.* at 18–27.

In response, the Tedericks argue that the Court should dismiss LoanCare's Motion for Summary Judgment on the basis that LoanCare's own evidence is contradictory. Resp. Opp'n at 16. One apparent contradiction involves "the propriety of the dates upon which Defendant credited their payments, as well as related sequencing." *Id.* at 18. The Tedericks also argue that a contradiction pertaining to daily interest accrual negates the facts LoanCare has set forth. *Id.* The Tedericks contend that these are trial-worthy contradictions. *Id.* at 19. They further argue that LoanCare has failed to clarify or resolve any material ambiguity the Court identified. *Id.* at 21.

The Court's main objective in construing the WVCCPA is to ascertain and give effect to the legislature's intent. *Justice v. CNA Nat'l Warranty Corp.*, 346 F. Supp. 3d 873, 875 (S.D.W. Va. 2018) (internal citation omitted). The Court begins, as always, with the statutory text. The

dispositive text of Section 127 the WVCCPA prohibits debt collectors from using "any fraudulent, deceptive or misleading representation or means to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127. The statute lists instances in which a debt collector would be liable under the Act. Subsection (d) prohibits "[a]ny false representation or implication of the character, extent or amount of a claim against a consumer, or of its status in any legal proceeding." W. Va. Code § 46A-2-127(d). Thus, the Tedericks must be the victim of a "false representation or implication" at the hands of LoanCare. W. Va. Code § 46A-2-127(d). In other words, LoanCare must have incorrectly applied the Prepayments. Section 128 states that "no debt collector may use unfair or unconscionable means to collect or attempt to collect any claim." W. Va. Code § 46A-2-128.

The plain meaning of the dispositive text supports Summary Judgment. Indeed, "fraudulent act" is defined as "[c]onduct involving bad faith, dishonesty, a lack of integrity, or moral turpitude." *Fraudulent Act*, BLACK'S LAW DICTIONARY (12th ed. 2024). It follows that a "false representation" under Subsection (d) must be more than a mistake—a false representation must involve bad faith, dishonesty, a lack of integrity, or moral turpitude. As discussed further below, the purpose of the WVCCPA bolsters this position.

The Court need not conclude whether LoanCare properly applied the Tedericks' Prepayments. The Court concludes that LoanCare's conduct, even if they misapplied the Prepayments, does not rise to the level of a "false representation." There can be no violation under Section 128 either because there is no unfair or unconscionable collection practice.

## B. The WVCCPA's Purpose

The WVCCPA's purpose supports Summary Judgment in LoanCare's favor. The Tedericks argue that the Court should deny LoanCare's motion "because it has essentially done so

three times." Resp. Opp'n at 16. But at the Motion to Dismiss stage, the Court simply concluded that the Tedericks sufficiently articulated facts that, when accepted as true, demonstrated that they were plausibly entitled to relief. Dismissal Order, ECF No. 40 at 6. The Court was required to construe all facts in the Tedericks' favor. At that stage, the Tedericks' allegations were sufficient to survive dismissal. Indeed, the Court concluded that "[t]he Tedericks plausibly allege[d] that LoanCare misapplied their combined payments." *Id.* at 18. The Court also concluded that the Tedericks plausibly alleged that the monthly statements were false representations. *Id.* at 25. These conclusions came after assuming all the facts alleged in their complaint were true.

Now the standard is heightened. The Tedericks have the burden of proof at trial, and as such, they must "designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (1986) (internal citations omitted). Material facts are those necessary to establish the elements of a party's cause of action. *Anderson*, 477 U.S. at 248. At the Summary Judgment stage, purely unsupported speculation will not do. *Ash*, 800 F.2d at 411–12.

Assume LoanCare did misapply the Tedericks' Prepayments. The Court must still consider whether LoanCare's conduct falls under the WVCCPA's purview. The WVCCPA is a remedial act. "Where an act is clearly remedial in nature, we must construe the statute liberally so as to furnish and accomplish all the purposes intended." *Boczek v. Pentagon Fed. Credit Union*, 725 F. Supp. 3d 542, 546 (N.D.W. Va. 2024) (citing *State ex rel. McGraw v. Scott Runyan Pontiac-Buck, Inc.*, 194 W. Va. 770, 777 (1995). The "purpose of the [WV]CCPA is to protect consumers from unfair, illegal, and *deceptive* acts or practices by providing an avenue of relief for consumers who would otherwise have difficulty proving their case under a more traditional cause of action." *Id.* (citing *State ex rel. McGraw*, 194 W. Va. at 777). (emphasis added).

But there are limits to the Court's liberal interpretation of the WVCCPA. "[T]he legislative

9

purpose of the WVCCPA is not to impose harsh civil penalties for simple mistakes." *Bourne v. Mapother & Mapother, P.S.C.*, 998 F.Supp.2d 495, 505 (S.D.W.Va. 2014). The WVCCPA does not seek to penalize misrepresentations of the character, extent or amount of a debt unless it is fraudulent, deceptive, or misleading. *Cf. Perrine v. Branch Banking and Tr. Co.*, No. 2:17-CV-70, 2018 WL 11372226 (N.D.W. Va. Sept. 25, 2018). Indeed, "[t]he statute was designed to protect consumers against unscrupulous collection practices." *Thomas v. Firestone Tire & Rubber Co.*, 164 W. Va. 763, 769 (1980).

Given the evidence the parties have presented, the Court concludes that this is no more than a billing dispute. The Tedericks argue that the documents LoanCare produced "indicate LoanCare's longstanding knowledge and straight-up disregard of the impact of its conduct." Resp. Opp'n at 24. After reviewing the exhibits attached to the Tedericks' Response, the Court rejects this argument. The internal communications consist of conversations amongst employees in which an employee acknowledges that the account is not a "Daily Simple Interest" account ("DSI"). Resp. Opp'n Ex. B. True, LoanCare admits error. But these errors do not amount to the fraudulent conduct the Tedericks complained of because the communications do not pertain to the application of Prepayments. *See id*; *see also* Resp. Opp'n Exs. C, D.

If the Court were to hold that a genuine issue of material fact existed, the Court would be greenlighting civil penalties for a simple mistake—this would contravene the purpose of the WVCCPA. *Cf. Bourne*, 998 F.Supp.2d at 505. The Tedericks have not presented any evidence that suggests LoanCare engaged in the fraudulent conduct the WVCCPA was meant to deter.

It is important to clarify the central issue here. To be sure, LoanCare may have misapplied the Tedericks' Prepayments resulting in LoanCare receiving unearned interest. But the question is not simply whether and to what extent LoanCare got this wrong. The proper inquiry is whether

LoanCare *meant* to get it wrong. The proper inquiry is whether LoanCare engaged in an unfair, illegal, and deceptive act or practice. *Boczek*, 725 F. Supp. 3d at 546. The proper inquiry is whether the Tedericks have suffered harm that triggers the WVCCPA. The Tedericks have not demonstrated that there is a genuine dispute as to any fact regarding these questions.

Merely finding that LoanCare misapplied Prepayments does not make Summary Judgment inappropriate. Nothing in the record suggests that LoanCare engaged in "fraudulent, deceptive or misleading representations or means to collect or attempt to collect claims or to obtain information concerning consumers." W. Va. Code § 46A-2-127. Likewise, there is nothing "unfair or unconscionable" about the way LoanCare applied the Prepayments. W. Va. Code § 46A-2-128. The Tedericks have not met their burden "by offering sufficient evidence to show the existence of a genuine dispute" as to a material fact. *Arthur v. Pet Dairy*, 593 Fed. App'x 211, 215–16 (4th Cir. 2015). (citing *Anderson*, 477 U.S. at 248). The evidence reveals that, at most, LoanCare was merely wrong. And as discussed above, simply being wrong is not conduct for which the WVCCPA covers.[3] *See Bourne*, 998 F.Supp.2d at 505.

Two cases from the Northern District of West Virginia are instructive. In *Rice v. Green Tree Servicing, LLC*, No. 3:14-CV-93, 2015 WL 5443708 (N.D.W. Va. Sept. 15, 2015), the court considered whether a loan servicer was liable under the WVCCPA. There, Rice's loan contract required him to purchase private mortgage insurance ("PMI"). Rice sued Green Tree under § 46A-2-127 of the WVCCPA, alleging that they sent Rice monthly billing statements that improperly included a PMI premium. *Id.* at *11. Green Tree argued that they included the premiums in monthly billing statements as a good-faith effort to comply with the Homeowners Protection Act

---

[3] LoanCare cites W. Va. Code § 46A-5-101(8) for the proposition that no liability is imposed for violations of the WVCCPA that are unintentional. Mem. Supp. at 17. The Tedericks argue that LoanCare fails to establish the essential elements of this defense. Resp. Opp'n at 24. The Court need not address this issue because LoanCare's conduct has not triggered the WVCCPA.

("HPA"). *Id.* The court concluded that Green Tree incorrectly interpreted the HPA. *Id.* at *12. But

the court held that the charges "did not amount to a 'false representation'" under § 46A-2-127(d)

because Green Tree attempted to comply with federal and state law. *Id.* The court concluded that

Green Tree's conduct was not fraudulent, deceptive, or misleading. *Id.*

Likewise, in *Perrine v. Branch Banking & Tr. Co.,* No. 2:17-cv-70, 2018 WL 11372226

(N.D. W. Va. Sept. 25, 2018), the court considered a defendant's liability under the WVCCPA.

There, Perrine and his co-plaintiff made payments on their loan to Branch Banking and Trust

Company ("BB&T") containing amounts for their monthly mortgage payment and payment

protection plan. *Id.* at *1. Perrine alleged that BB&T erroneously applied the payment protection

amounts to the principal. *Id.* at *1, *5. Perrine argued that every billing statement violated § 46A-

2-127(d) because BB&T misrepresented the "character, extent or amount" of the debt Perrine

owed. *Id.* at *5; § 46A-2-127(d). BB&T argued that the Truth in Lending Act ("TILA") required

BB&T to send the statements. *Id.* The court held that the billing statements were not "false

representations" because BB&T sent them "in an effort to comply with federal and state law." *Id.*

And even if the statements were incorrect, BB&T's conduct "was not fraudulent, deceptive, or

misleading." *Id.*

Here too, the Court concludes that LoanCare's conduct did not amount to a false

representation. LoanCare's Prepayment applications were made in an effort to comply with Fannie

Mae Servicing Guidelines. According to the Second Amended Complaint, between 2005 and 2020,

the Tedericks made 180 combined payments. SAC ¶ 20. Guideline F-1-09 provides directions on

how to apply curtailments. Mem. Supp. at 25. The guideline states "[i]f the borrower includes a

curtailment with his or her monthly payment when the mortgage loan is current, the servicer must

apply monthly payments in the order described in the following table[.]" *Id.* The table provides

that when the borrower submits a curtailment with the scheduled monthly payment (i.e, makes a combined payment), the servicer must apply the scheduled monthly payment first, then apply the curtailment. *Id.* The Tedericks' 180 payments fit squarely into this category. Thus, LoanCare's conduct is not a false representation under the Act. LoanCare's conduct is not unfair or unconscionable either.

Moreover, there is doubt about whether LoanCare is a "debt collector" that would be subject to the WVCCPA. Indeed, "the language of the WVCCPA appears to raise some question as to its applicability to non-creditors" like loan servicers. *Delebreau v. Bayview Loan Servicing, LLC*, 770 F. Supp. 2d 813, 819 n.4 (S.D.W. Va. 2011), *aff'd*, 680 F.3d 412 (4th Cir. 2012). LoanCare avers, and the Tedericks do not refute, that "LoanCare never needed to refer the Loan for debt collection or undertake debt collection" for the Tedericks' Loan. Mem. Supp. ¶ 87; *See* Resp. Opp'n at 11–12. This suggests, as the court in *Rice* pointed out, that LoanCare's conduct "arguably[] did not constitute debt collection practices at all." 2015 WL 5443708 at *12. Regardless of LoanCare's status as a debt collector, Summary Judgment in their favor is appropriate. The text, purpose, and relevant case law suggests LoanCare's conduct was not a "false representation" under the WVCCPA, and there is no evidence of unfair or unconscionable practices.

The Court is fully aware of its duty to construe the WVCCPA liberally. *Bourne*, 998 F.Supp.2d at 505. But to hold that LoanCare engaged in conduct covered by the Act would "stretch too far the language and the purpose of the WVCCPA." *Rice*, 2015 WL 5443708 at *12. Although Prepayments may have been applied incorrectly, LoanCare's conduct "was not fraudulent, deceptive, or misleading, as required for this Court to find a violation of West Virginia law." *Perrine* 2018 WL 11372226 at *5. None of the factual disputes the Tedericks raise are triable

13

issues that would ultimately affect the outcome of this case. *Lee v. Bevington*, 647 F. App'x 275, 281 (4th Cir. 2016) (citing *Anderson*, 477 U.S. at 248). Accordingly, Summary Judgment in LoanCare's favor is appropriate.

## IV.  CONCLUSION

For the reasons set forth above, LoanCare's Motion for Summary Judgment is **GRANTED**. ECF No. 74.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED.**

Norfolk, Virginia
February 24, 2025

Raymond A. Jackson
United States District Judge