IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

GARY TEDERICK and LISA TEDERICK,
individually and on behalf of all others
similarly situated,

      Plaintiffs,

      v.                                       CIVIL ACTION NO. 2:22-cv-394

LOANCARE, LLC,

      Defendant.

*MEMORANDUM OPINION AND ORDER*

Before the Court is Gary Tederick and Lisa Tederick's ("the Tedericks") Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel. ECF No. 52. ("Mot."). Defendant LoanCare, LLC ("LoanCare") opposes the Motion. ECF No. 55. ("Resp. Opp'n"). The Tedericks replied. ECF No. 56. The Court has considered the memoranda of the parties, and this matter is now ripe for judicial determination. Upon review, the Court finds that a hearing on these Motions is not necessary. *See* Va. Local Civ. R. 7(J). For the reasons stated herein, the Tedericks' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel is **DENIED**.

## I.    FACTUAL AND PROCEDURAL HISTORY

On September 20, 2022, the Tedericks filed the instant suit. ECF No. 1. On January 27, 2023, LoanCare filed a Motion to Dismiss for Failure to State a Claim and for Failure to Join Necessary Parties. ECF No. 15. On October 2, 2023, the Court granted in part and denied in part LoanCare's Motion with leave to amend its complaint within fifteen days. ECF No. 25. The Tedericks filed an Amended Complaint on October 17, 2023, and a Second Amended Complaint

1

on October 25, 2023. ECF Nos. 28, 30. On November 8, 2023, LoanCare filed a Motion to Dismiss for Failure to State a Claim. ECF No. 31. On March 21, 2024, the Court granted the Motion as to Counts Two and Three of the Second Amended Complaint and denied the Motion as to Count One. ECF No. 40. Count One alleges violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). *See* Second Amended Complaint. ECF No. 30 ("SAC"). On July 18, 2024, the Tedericks filed the instant Motion to Certify their proposed class with regard to the sole remaining claim under the WVCCPA. Mot. at 6.

On November 22, 2024, LoanCare filed a Motion for Summary Judgment. ECF No 74. The Court granted the Motion on February 24, 2025. ECF No. 204. On March 26, 2025, the Tedericks filed a Notice of Appeal. ECF No. 206. On February 23, 2026, the Fourth Circuit vacated and remanded this Court's Opinion on LoanCare's Motion for Summary Judgment. ECF Nos. 210, 211. As a result, the Court now returns to the Tedericks' Motion for Class Certification and provides a basic recitation of the relevant facts as alleged.

The Tedericks built their home in Hedgesville, West Virginia in 2002. SAC ¶ 7. On March 4, 2004, the Tedericks refinanced their home. *Id.* ¶ 8. The originating lender was Mid-States Financial Group, Inc., and the Note was secured by a Deed of Trust held by the Federal National Mortgage Association ("Fannie Mae"). *Id.* ¶ 9. The terms of the loan required the Tedericks to make monthly payments of $875.36 to the Note Holder beginning May 1, 2004, with any remaining amounts owed in full on April 1, 2034. SAC Ex. A at ¶ 3, ECF No. 30-1 ("Note"). Interest is "charged on unpaid principal until the full amount of Principal has been paid." *Id.* ¶ 2.

The Note states that monthly payments are to be applied as of its scheduled due date and will be applied to interest before Principal. *Id.* ¶ 3. The Tedericks could "make payments of Principal at any time before they are due. A payment of Principal only is known as 'Prepayment.'"

2

*Id.* ¶4. The Tedericks could only designate a payment as a Prepayment if they had made "all the monthly payments due under the Note," and needed to notify the lender in writing when making a Prepayment. *Id.*

On receipt of a Prepayment, the Note Holder would use the Prepayments "to reduce the amount of Principal" owed. *Id.* The Note Holder is also authorized "to apply [a] Prepayment to the accrued and unpaid interest on the Prepayment amount before applying [the] Prepayment to reduce the Principal amount of the Note." *Id.* The Deed of Trust further specifies that "[v]oluntary prepayments shall be applied first to any prepayment charges and then as described in the Note." Deed of Trust § 2; SAC ¶ 11.

The Tedericks consistently made Prepayments throughout the life of the loan. SAC ¶ 12. The Tedericks would write one check for their monthly payment and the Prepayment, and they would specify in the memo line that a Prepayment amount was included in the total. *Id.* ¶ 14. The Tederick's loan accrued scheduled interest: the Tedericks did not owe interest until the scheduled monthly payment was due. *Id.* ¶ 15.

The Fannie Mae Servicing Guidelines ("Guidelines") address the order in which a lender or servicer should apply Prepayments *Id.* ¶ 16. Guideline F-1-09 states that when the borrower submits a prepayment the scheduled monthly payment, the servicer should apply the scheduled monthly payment first, then apply the Prepayment. *Id.* When the borrower submits a payment at any other time of the month, separately, the loan servicer must apply the Prepayment first, then apply the next scheduled monthly payment. *Id.* Guideline C-1.1-01 requires servicers to "[a]pply scheduled payments, including late charges (if applicable) in the order specified in the security interest" and notes "[w]hen multiple payments are received, each payment must be applied separately." *Id.* Ex. D at 1. Guideline C-1.2-02 provides "[t]he servicer must immediately accept

3

and apply an additional principal payment (known as principal curtailment) identified by the borrower as such for a current mortgage loan." *Id.* Ex. D at 7. According to the Tedericks, this means that when a borrower makes a Prepayment any time before the scheduled monthly payment, the servicer must apply the Prepayment to the unpaid balance immediately.

Between 2005 and 2020, the Tedericks made 180 payments with both a scheduled monthly payment and a Prepayment ("combined payments") before the monthly payment due date. *Id.* ¶ 20. In 152 of those payments, a servicer failed to apply the Tedericks' Prepayment and scheduled monthly payment in the correct order. *Id.* ¶ 21. Allegedly, the servicer applied the scheduled monthly payment and then the Prepayment. *Id.* ¶ 22. Thus, the Tedericks were charged interest they did not owe and should not have been charged. *Id.* ¶ 23.

LoanCare became the subservicer of the mortgage loan around April 2019. *Id.* ¶ 24. The same month, the Tedericks contacted LoanCare to explain the previous servicer's mistake and get it corrected. *Id.* ¶ 25. The Tedericks spoke to a representative who assured them the problem was fixed. *Id.* However, LoanCare did not fix the issue and continued to apply the Prepayments in the incorrect order. *Id.* ¶ 26. The Tedericks repeatedly attempted to have the misapplications rectified, but LoanCare was not responsive. *Id.* ¶ 31.

Around September 2020, the Tedericks requested a payoff statement. *Id.* ¶ 29. Around September 21, 2020, the Tedericks paid the loan in full. *Id.* ¶ 30. The Tedericks claim that if LoanCare would have correctly applied their Prepayment before the scheduled payment, the Tedericks would have owed less interest on less unpaid principal. *Id.*

## II.    LEGAL STANDARD

Generally, "'[d]istrict courts have wide discretion in deciding whether or not to certify a class and their decisions may be reversed only for abuse of discretion,' recognizing, of course, that

4

this 'discretion must be exercised within the framework of Rule 23.'" *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003) (citing *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001)). Accordingly, to certify a suit as a class action, the proponent of class certification has the burden of establishing that the conditions enumerated in Rule 23 of the Federal Rules of Civil Procedure have been met. *Windham v. American Brands, Inc.*, 565 F.2d 59, 64 n. 6 (4th Cir. 1977) (en banc) *cert. denied*, 435 U.S. 968 (1978). Specifically, the moving party must prove it satisfies all four of the elements of Rule 23(a) and one of the subsections of Rule 23(b). Fed. R. Civ. P. 23; *see also Pitt v. City of Portsmouth, Va.*, 221 F.R.D. 438, 443 (E.D. Va. 2004). Rule 23 provides, in pertinent part:[1]

> (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

> (b) **Class Actions Maintainable.** An action may be maintained if the prerequisites of subdivision (a) are satisfied, and in addition:
> ...
> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* The Court must conduct a "rigorous analysis" in determining whether the requirements of Rule 23 have been met. *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982); *Chisolm v.*

---

[1] Plaintiff has moved for class certification pursuant to Rule 23(b)(3). *See* Mot.

5

*TranSouth Fin. Corp.*, 184 F.R.D. 556, 560 (E.D. Va. 1999) (holding the same). In conducting its rigorous analysis of Rule 23, the Court must take a "close look at the facts relevant to the certification question and, if necessary, make specific findings on the propriety of certification." *Thorn v. Jefferson—Pilot Life Ins. Co.*, 445 F. 3d 311, 319 (4th Cir. 2004) (internal quotations omitted). "Such findings can be necessary even if the issues tend to overlap into the merits of the underlying case." *Id.*

## III.   DISCUSSION

In their Motion for Class Certification, the Tedericks argue that the instant case is "tailor-made for class-action treatment." Mot. at 9. Specifically, the Tedericks argue that this case concerns LoanCare's business policy and practice of improperly delaying the crediting of Prepayments made by borrowers of home loans LoanCare serviced. *Id.* The Tedericks further argue that certification is appropriate because it concerns relatively minor damages. *Id.* The Tedericks aver that a class-action is the ideal vehicle to efficiently and fairly resolve this dispute. *Id.*

For the following reasons, the Tedericks have failed to satisfy the numerosity, predominance, and superiority requirements of Rule 23. Rule 23 is more than a mere pleading standard: "a party seeking class certification must affirmatively demonstrate [their] compliance with the Rule." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). The Tedericks have not done so, and certification is improper.

### A.   Rule 23(a)

The Tedericks contend that the Class satisfies each of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Rule 23(a) requires four prerequisites: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a). The

6

United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") also imposes a threshold ascertainability requirement for class certification. Lastly, "the class action must fall within one of the three categories enumerated in Rule 23(b)." *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 423 (4th Cir. 2003).

### 1. Ascertainability

The Tedericks propose the following Class:

> All natural persons who were residing in West Virginia and credited by LoanCare with an additional principal payment on a home loan before the next scheduled periodic-payment due date, at any time from September 20, 2018, through the present.

Mot. at 7, 10. The Tedericks argue that the proposed Class is ascertainable. Mot. at 10. They contend that the Class members are readily ascertainable because each piece of information needed to identify them is objective and in the possession of LoanCare. *Id.* This information includes each member's name, state of residency, dates, and prepayments credited. *Id.*

LoanCare argues that the Tedericks do not have evidence to support their claim that the identifying information is objective and in LoanCare's possession. Resp. Opp'n at 5. LoanCare claims that it does not track the borrowers' states of residency, and that West Virginia requires individualized proof of residency. *Id.* at 5–6. LoanCare argues that this need for individualized fact-finding renders class certification inappropriate. *Id.* at 6.

The Fourth Circuit has "repeatedly recognized that Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable.'" *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *Career Counseling, Inc. v. AmeriFactors Fin. Grp., LLC*, 91 F.4th 202, 206 (4th Cir. 2024) (citing *EQT Prod. Co.*, 764 F.3d

at 358). Under the ascertainability requirement, "if class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,' then a class action is inappropriate." *Id.*

LoanCare's sole objection to ascertainability is that because it does not track "state of residency" as a data point, class action certification is inappropriate. Mot. at 5–6. In support of this argument, LoanCare provides the Declaration of Edith Tharpe. ECF No. 55-2 ("Tharpe Decl."). Tharpe is a Cashiering Manager for LoanCare. Tharpe Decl. ¶ 2. Tharpe states that "LoanCare does not maintain the 'state of residency' as a data point for borrowers and borrowers could be 'residents' of any state" and have a loan secured by property in West Virginia. *Id.* ¶ 55.

There is an objective method to determine whether someone fits into the proposed class. Though it may be true that LoanCare does not track "state of residency" as a data point for borrowers, this does not make the proposed class members any less "readily identifiable." Naturally, LoanCare must track its borrowers' addresses for billing purposes. Indeed, in their own reply, LoanCare submitted the Tedericks' account history. Resp. Opp'n, Ex. 3. ECF No. 55-2. The account history has fields with the Tedericks' names, address, city, and state. *See id.* It follows that each borrower LoanCare serviced would have the same account history, with the same fields, identifying a borrower's address, city, and state. The fact that the "state" field does not say "state of residency" does not make borrowers any less ascertainable. The Tedericks are simply seeking certification of a class of West Virginia residents. Practically speaking, if the "state" field says West Virginia, that borrower would fit into the Tedericks' proposed class. A person receives their bills in the state in which they reside. This information is in LoanCare's possession and is objective. Whether the borrower's state of residency is identified in the account history or some other record LoanCare maintains, this objective criterion to identify potential class members exists.

8

The Court would not need to do extensive fact-finding to identify potential class members. Identifying potential class members must be administratively feasible. *EQT Production Co.*, 764 F.3d at 358 (citing 7A Charles Alan Wright et al., *Federal Practice & Procedure* § 1760 (3d ed. 2005)). Verifying state of residency would be administratively feasible. *See Kelly v. RealPage Inc.*, 47F. 4th 202, 224 (3d Cir. 2022) ("[A] straightforward 'yes-or-no' review of existing records to identify class members is administratively feasible even if it requires review of individual records with cross-referencing of voluminous data from multiple sources.").

Therefore, the Tedericks have demonstrated that the Court can readily identify the class members in reference to objective criteria and is thus ascertainable.

### 2. Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no specified number of class members needed to maintain a class action. *In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 234 (4th Cir. 2021). The issue of numerosity "is one primarily for the District Court, to be resolved in the light of the facts and circumstances of the particular case." *Kelley v. Norfolk & W. Ry. Co.*, 584 F.2d 34 (4th Cir. 1978). This Court, among others, has previously held that "classes consisting of forty or more members are considered sufficiently large to satisfy the impracticability requirement." *American Sales Company, LLC v. Pfizer, Inc.* 2017 WL 3669604, at *6 (E.D. Va. July 28, 2017); *see, e.g., Meijer, Inc. v. Warner Chilcott Holdings Co. III., Ltd.*, 246 F.R.D. 293, 301 (D.D.C. 2007) (quoting *Thomas v. Christopher*, 169 F.R.D. 224, 237 (D.D.C. 1996)) (finding the numerosity requirement satisfied by a class of thirty members).

The Tedericks argue that the proposed Class far exceeds the number of members that could practically be joined to this action. Mot. at 10–11. LoanCare raises the same argument for

9

numerosity that it advanced for ascertainability: the Tedericks contend, without evidence, that there are 5,000 members in the Class. Resp. Opp'n at 5.

The number of class members is the starting point of a numerosity analysis. *In re Modafinil Antitrust Litig.*, 837 F.3d 238, 250 (3d Cir. 2016), *as amended* (Sept. 29, 2016). A class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone. *Id.* (internal citation omitted). As noted above, plaintiffs must "affirmatively demonstrate [] compliance" with Rule 23. *Wal-Mart*, 564 U.S. at 351; *EQT Prod. Co. v. Adair*, 764 F.3d at 358. Further, "an action is not maintainable as a class action merely because it is designated as such in the pleadings." *Cash v. Swifton Land Corp.*, 434 F.2d 569, 571 (6th Cir. 1970).

The Fourth Circuit has held that "[w]here 'the only relief sought for the class is injunctive and declaratory in nature,' even 'speculative and conclusory representations' as to the size of the class suffice" for numerosity. *Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d 638, 645 (4th Cir. 1975). The implication of the Fourth Circuit's holding on this issue is that where the relief sought is not injunctive and declaratory in nature, "speculative and conclusory representations" of class size do not satisfy the numerosity requirement. *Cf. id.*

Other circuits agree. Plaintiffs must present "some evidence of established, ascertainable numbers constituting the class in order to satisfy even the most liberal interpretation of the numerosity requirement." *Rex v. Owens ex rel. State of Okl.*, 585 F.2d 432, 436 (10th Cir. 1978) (holding that the trial court did not abuse its discretion in refusing class certification where the plaintiff claimed the impracticability of joinder but "did not set forth further allegations or other pleadings demonstrating the truth of this assertion"). The moving party "must produce some evidence or otherwise establish by reasonable estimate the number of class members who may be involved." *Id; see also Ibe v. Jones*, 836 F.3d 516, 528 (5th Cir. 2016). A plaintiff "still bears the

10

burden of making *some* showing, affording the district court the means to make a supported factual finding, that the class actually certified meets the numerosity requirement." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1267 (11th Cir. 2009) (emphasis in original). The Court cannot rely on mere speculation as to how large the damages class is, "no matter how reasonable the speculation appears." *Taylor v. Screening Reports, Inc.*, 289 F.R.D. 370, 373 (N.D. Ga. 2013) (citing *Vega*, 564 F.3d at 1267–68). The Court must make a factual determination, based on the preponderance of the evidence, that Rule 23's requirements have been met; however, the Court must be presented with evidence that would enable it to do so without resorting to mere speculation. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 484 (3d Cir. 2018) (citing *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 596–597 (3d Cir. 2012). The Tedericks need not offer direct evidence of the exact number of members, but "speculative and conclusory representations" will not suffice. *See Doe v. Charleston Area Med. Ctr., Inc.*, 529 F.2d at 645. In other words, in the absence of direct evidence, the Tedericks "must show sufficient circumstantial evidence specific to the products, problem, parties, and geographic areas actually covered by the class definition" to allow the court to make a factual finding. *Marcus v. BMW of N. Am., LLC*, 687 F.3d at 596. Only then may the court rely on common sense to make reasonable inferences about the size of the class. *Id.*

Here, the Tedericks provide no evidence to substantiate their claim that 5,000 consumers are impacted by LoanCare's alleged conduct. Indeed, the Tedericks state that the case implicates "perhaps 5,000 individuals." Mot. at 20. In their Second Amended Complaint, the Tedericks state that "[o]n information and belief, the Class consists of approximately 5,000 consumers for whom LoanCare serviced a mortgage loan on residential property in West Virginia and who have a mailing address in West Virginia." SAC ¶ 64. The Court has not uncovered anything in the record to substantiate these claims.

11

In recent years, the numerosity requirement has been given "real teeth." *Mielo*, 897 F.3d at 484 (internal citation omitted). LoanCare is a large company, likely servicing many consumers. "[A]nd as such, it might be tempting to assume that the number" of consumers for whom LoanCare serviced a mortgage loan on residential property in West Virginia and who have a mailing address in West Virginia can overcome the generally low hurdle presented by Rule 23(a)(1). *Vega*, 564 F.3d at 1267. But inferring numerosity "without the aid of a shred of [] evidence" would be "an exercise in sheer speculation." *Id.* The Tedericks have not made a showing that would "afford the [Court] the means to make a supported factual finding" that the class meets the numerosity requirement. *Vega*, 564 F.3d at 1267.

The Court will not speculate that the proposed class is sufficiently numerous. Therefore, the Court is not satisfied that the Tedericks have met the prerequisites of Rule 23(a)(1). Thus, certification is improper. *Wal-Mart*, 564 U.S. at 351 (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).[2]

### 3. Commonality & Typicality

The commonality and typicality requirements tend to merge. While Rule 23(a)(2) requires that questions of law or fact be common to the class, Rule 23(a)(3) similarly requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'" *Wal-Mart Stores, Inc.*, 564 U.S. at 350–51 (2011) (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "A common question is one that can be resolved for each class member in a single hearing, such as the question of whether an employer engaged in a pattern and

---

[2] Given the four Rule 23(a)(1) prerequisites must be satisfied, the Court need not proceed with the analysis after Plaintiffs fail to meet one. However, for purposes of fully establishing the record and given the lengthy and complex nature of this dispute, the Court proceeds.

practice of unlawful discrimination against a class of its employees." *Thorn*, 445 F.3d at 318. Stated differently, "[w]hat matters to class certification ... [is] the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc.*, 564 U.S. at 351.

Meanwhile, typicality ensures that "only those plaintiffs who can advance the same factual and legal arguments may be grouped together as a class." *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 340 (4th Cir. 1998).

Here, the Tedericks argue that they meet the commonality requirement of Rule 23(a)(2). The Tedericks argue that common questions of fact and law in this case include:

- Whether LoanCare is a "debt collector" under the WVCCPA;

- Whether LoanCare prepayments must be applied upon receipt to loan principal under the applicable loan agreements;

- Whether LoanCare applied home-loan prepayments to loan principal upon receipt;

- Whether LoanCare acted fraudulently, deceptively, or misleadingly by declining to credit home-loan prepayments upon receipt; and

- Whether LoanCare acted unfairly or unconsciously by declining to credit home-loan prepayments upon receipt.

Mot. at 12. LoanCare argues that the Tedericks fail to show any common issue. Resp. Opp'n at 25. It argues that the Tedericks "simply beg the question" and assume the conclusion without demonstrating it. *Id.* It argues that the Tedericks wrongfully apply their loan terms, payment conduct, and specific experiences without demonstrating that these experiences apply to the class. *Id.* at 25–26. LoanCare further argues that because the questions central to the Tedericks' claim depend on their mortgage terms and Fannie Mae Guidelines, the alleged common questions of fact

13

or law cannot be answered in one stroke. *Id.* at 26.

LoanCare does not sufficiently rebut the Tedericks' commonality argument. While it is true that many of the proposed questions of fact hinge on the Tedericks' experiences, this observation only partially resolves the inquiry. The Tedericks raised the question of whether LoanCare was a "debt collector" under the WVCCPA. Mot. at 12; Reply at 5. Whether LoanCare is a debt collector as defined by the WVCCPA has nothing to do with the terms of the Tedericks', or any proposed class member's, loan terms, payment conduct, or experiences with LoanCare. The question of whether home-loan debts are "claims" under the WVCCPA is a common question for the same reason. If LoanCare is a "debt collector" for purposes of the WVCCPA, it is for anyone it services. Likewise, if home-loan debts are "claims," they are for any home loan LoanCare services. These questions "can be resolved for each class member in a single hearing." *Thorn*, 445 F.3d at 318. Accordingly, the Court is satisfied that the Tedericks have met the commonality requirement of Rule 23(a)(2).

The Tedericks argue that they readily satisfy the typicality requirement because they seek to certify a class based on the same alleged violation of the WVCCPA. Mot. at 13. They further argue that Plaintiffs assert the same legal theory and same source of injury, which makes their claim entirely typical of the class's claim. *Id.* at 13–14.

Typicality does not require that members of the class have identical factual and legal claims in all respects. *Broussard*, 155 F.3d at 344. But when the resulting harm "is dependent upon consideration of the unique circumstances pertinent to each class member," class certification is inappropriate. *Boley v. Brown*, 10 F.3d 218, 223 (4th Cir. 1993).

Here, borrowers in the proposed class have some aspects of their claims in common. They all had LoanCare as a subservicer and were allegedly credited prepayments incorrectly in violation

14

of the WVCCPA. However, as the Court discusses further below, there are variations in borrowers' loan provisions, subservicer history, and interest rates. Indeed, "[s]ome class members may have signed the same form, [and] some may have received the same documents... but taken as a whole the class claims [are] based on widely divergent facts." *Broussard*, 155 F.3d at 344 (citing *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998)). Therefore, the Tedericks have not met the typicality requirement.

### 4. Adequate representation

The final requirement of a Rule 23(a) analysis necessitates that the named plaintiffs, and their counsel, fairly and adequately protect the interests of the proposed class. A proponent of class action certification must demonstrate that the named plaintiffs and putative class will "share common objectives and the same factual and legal positions," ensuring that there are no "fundamental" conflicts that go to the "heart of the litigation." *Gunnells*, 348 F.3d at 430–31. Adequacy of counsel is the second requirement of Rule 23(a)(4). The adequacy of counsel requirement "raises concerns about the competency of class counsel." *Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13.

The Tedericks argue that there is no evidence in the record of a conflict of interest between the named parties and the class they seek to represent. Mot. at 14. They further argue that the Tedericks have shown that they are dedicated to advancing the litigation. *Id.* The Tedericks assert that their counsel are also adequate to be appointed class counsel because there is no evidence of conflicts of interest, and they have the financial resources to ensure adequate representation. *Id.*

"[A] conflict of interest "will not defeat the adequacy requirement if it is merely speculative or hypothetical." The Court finds that the conflicts of interest LoanCare raises are merely speculative or hypothetical. LoanCare asserts that the Tedericks have a self-interest in

15

avoiding a result that would put them in direct conflict with proposed class members, are in conflict with borrowers who would prefer to sue in West Virginia, and that they are in direct conflict with borrowers that want to pursue claims they do not want to pursue. Resp. Opp'n at 30. The Court finds no merit in these arguments. Accordingly, the Tedericks are adequate class representatives.

LoanCare's argument about the adequacy of class counsel fares no better. There is nothing in the record to suggest that proposed class counsel is unqualified, inexperienced, or unable to litigate this case. *See Gen. Tel. Co. of Sw.*, 457 U.S. at 157 n.13. Thus, the Tedericks have met the adequacy requirement.

## B. Rule 23(b)

Even if the Court concluded that the Tedericks met their burden under Rule 23(a), which it has not, the Court must proceed to determine whether Plaintiffs have met the requirements of Rule 23(b). Under Rule 23(b)(3), common questions of law or fact "must predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Further, a plaintiff must establish "that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* These requirements are commonly referred to as the *predominance* and *superiority* requirements of a Rule 23(b)(3) analysis.

The predominance requirement establishes a separate and "more stringent" analysis than Rule 23(a)'s commonality requirement. *Thorn*, 445 F.3d at 319 (quoting *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 n.4 (4th Cir. 2001)); *cf.* Fed. R. Civ. P. 23(a)(2) (requiring only the presence of common questions of law or fact). Predominance of common questions over individual issues ensures that the "proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623 (1997). "If the 'qualitatively overarching issue' in the litigation is common, a class may be certified notwithstanding the need

16

to resolve individualized issues." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D 183, 214 (E.D. Va. 2015) (citing *Ealy v. Pinkerton Gov't Servs.*, 514 F. App'x 299, 305 (4th Cir. 2013)); *see also In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 204 (S.D.N.Y. 2018) ("'[I]ndividual questions need not be absent' in order to certify a class under Rule 23(b)(3); the text of Rule 23(b)(3) itself contemplates that such questions will be present.") (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 81 (2d Cir. 2015)).

To satisfy the predominance requirement, a plaintiff must demonstrate that each element of the legal claim "is capable of proof at trial through evidence that is common to the class rather than individual." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, at 311 (3d Cir. 2008), *as amended* (Jan. 16, 2009). "Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." *Id.* (internal quotations and citations omitted). Accordingly, the Court must conduct a "rigorous analysis" of the Rule 23(b)(3) requirements, establishing various facts in support of such analysis. *Id.* at 323–24.

Finally, a plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority requirement ensures that proceeding by class action will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable consequences." *Amchem Prods., Inc.*, 521 U.S. at 615.

### 1. Predominance

The Tedericks argue that common issues predominate because the case complains of a

17

simple, common practice, and that the common practice is the controversy at the heart of the litigation. Mot. at 18. They assert that the class definition addresses common conduct and embraces only those members who have suffered a like injury under the same legal theory. *Id.* at 19.

LoanCare raises many arguments against predominance: it argues that causation, damages, and several defenses are individualized issues that predominate and thus preclude certification. Resp. Opp'n at 15–24.

Here, common issues of law or fact do not predominate over questions affecting only individual members. Predominance "is far more demanding" than Rule 23(a)'s commonality requirement. *Skipper v. Giant Food, Inc.*, 68 Fed. App'x 393, 397–98 (4th Cir. 2003) (citing *Amchem*, 521 U.S. at 623–24). Cases that likely present "significant questions of damages, liability, and defenses are 'ordinarily not appropriate' for class treatment." *Id.* at 398 (citing *Amchem*, 521 U.S. at 625).

As outlined above, there are issues of law common to all proposed class members. But these issues are outweighed by the individualized issues of fact present here. The Court is hesitant to conclude that common issues of fact predominate given "[t]he sheer number of contracts involved." *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004) (citing *Broussard*, 155 F.3d at 340). "This is not a situation in which all plaintiffs signed the same form contract." *Id.*

Consider damages. The Tedericks argue that individual damages calculations typically do not preclude class certification, and their damages would be calculated in a basic, mechanical, and transparent manner. Reply at 14. The Tedericks further argue that Rule 23 concerns itself with elements of liability, not damages calculations. *Id.*

"To be sure, individualized damage determinations cut against class certification under Rule 23(b)(3)." *Ward v. Dixie Nat. Life Ins. Co.*, 595 F.3d 164, 180 (4th Cir. 2010). "Predominance

also applies to damages because the efficiencies of the class action mechanism would be negated if questions of individual damage calculations... overwhelm questions common to the class." *In re Zetia*, 7 F.4th at 237 (quoting *Modafinil*, 837 F.3d at 260). This in mind, if "the formula for all class members was identical for all proposed class members," the Court would be satisfied that damages calculations were not individualized. *Ward v. Dixie Life Ins. Co.*, 595 F.3d at 180. But interest rates, for example, throw a wrench in the Tedericks' theory that damages calculations would be identical for all proposed class members.

Contrary to the Tedericks' contentions, LoanCare also raises legitimate concerns about liability. Individualized proof of damages causation is essential to liability and destroys predominance. *Lienhart*, 255 F.3d at 149. According to the Tedericks, LoanCare became the Tedericks' subservicer in April 2019. SAC ¶ 24. The Tedericks allege that "[b]etween February 2, 2005[,] and September 2, 2020, on at least 152 of these 180 occasions, a servicer failed to apply the Tedericks' prepayment and scheduled monthly payment in the correct order." *Id.* ¶ 21. On April 19, 2019, the Tedericks alerted LoanCare to the fact that *prior* servicers had misapplied their prepayments and requested that LoanCare correct the account. *Id.* ¶ 40. The Tedericks seek to certify a class for conduct occurring from September 20, 2018, to the present. Mot. at 7, 10. In effect, the Tedericks seek to certify a class that includes conduct from other subservicers that allegedly misapplied prepayments. In other words, the Court would need to know which borrowers switched from another subservicer to LoanCare between September 20, 2018, and the present, and what date they did so to determine the extent of damages attributable to LoanCare. The Court would have to conduct "the functional equivalent of a full-blown trial on damages causation for each putative class member." *Lienhart*, 255 F.3d at 149. Thus, common issues do not predominate.

As noted above, borrowers did not sign the same loan agreements. In determining whether

19

common issues of fact or law predominate, the Court must engage in a substantive analysis of the loan terms "to determine whether language variations destroy the possibility of the resolving common question(s) on a classwide basis." *EQT Prod. Co.*, 764 F.3d at 368. LoanCare raises several variations among sample loan agreements in their response. *See* Resp. Opp'n at 18–25. The Court need not address each to determine that the Tedericks have not satisfied the predominance requirement. Some borrowers have "Notice-and-Cure" provisions, which require plaintiffs to give LoanCare notice of their wrongdoing and an opportunity to cure it. *Id.* at 23. Other borrowers have agreements to arbitrate. *Id.* at 24. Others still waive their right to a jury trial. *Id.* 24–25. Additionally, borrowers may obtain different loans: borrowers could have VA loans, USDA loans, or FHA loans. *Id.* at 7. All of them are subject to different guidelines. *Id.* at 9. The number of additional contracts and provisions, "even though many are form contracts, suggests that individualized issues would predominate in this case." *Westways World Travel, Inc. v. AMR Corp.*, 2005 WL 6523266 (C.D. Cal. Feb. 24, 2005), *aff'd*, 265 F. App'x 472 (9th Cir. 2008) (citing *Klay*, 382 F.3d at 163–64). The Tedericks have not demonstrated that common issues of fact or law predominate over individualized issues. Therefore, certification is inappropriate.

### 2. Superiority

Finally, the Court considers superiority. The Tedericks argue that a class action is the superior vehicle for adjudicating their claim. They argue that there is a strong presumption in favor of superiority where the alternative to a class action is likely to be no action at all for the majority of the class members.

Rule 23 identifies four factors as pertinent to the superiority inquiry: (a) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already commenced; (c) the

20

desirability of concentrating the litigation in the particular forum; and (d) the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3). This is a "nonexhaustive list." *Amchem*, 521 U.S. at 615.

A class action is not the superior vehicle to adjudicate this claim. There is substantial overlap in the superiority and predominance inquiries. *Kelly v. RealPage Inc.*, 47 F.4th at 215 n.11. Predominance and superiority seek to cover cases "in which a class action would achieve economies of time, effort, and expense, and promote … without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Dissimilarity (i.e., predominance of individualized issues) among class members "would make use of the class-action device inefficient or unfair." *Amgen In. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 470.

As outlined above, the Tedericks have not demonstrated that common issues of fact or law predominate over individualized issues. "[W]hen individual rather than common issues predominate, the economy and efficiency of class action treatment are lost and the need for judicial supervision and the risk of confusion are magnified." *Zimmerman v. Bell*, 800 F.2d 386, 390 (4th Cir. 1986) (internal citation omitted). Therefore, the requirements of Rule 23(b)(3) have not been met, and class certification must be denied.

## IV.    CONCLUSION

For the reasons set forth above, the Tedericks' Motion for Class Certification, Appointment of Class Representatives, and Appointment of Class Counsel is **DENIED**. ECF No. 52.

The Court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to the parties.

**IT IS SO ORDERED**.

Norfolk, Virginia
July 29, 2026

_____
Raymond A. Jackson
United States District Judge

21